DALLAS COUNTY, TEXAS, v. HONORABLE CHARLEY LOCKHART, STATE TREASURER.

No. 7124.   Decided July 1, 1936.
Rehearing overruled July 22, 1936.
(96 S. W., 2d Series, 60.)

*Alex F. Weisberg* and *Thompson, Knight, Baker & Harris,* all of Dallas, for relator.

*William McCraw,* Attorney General, *William C. Davis, Effie Wilson-Waldron* and *Victor W. Bouldin,* Assistants Attorney General.

MR. JUDGE HICKMAN of the Commission of Appeals delivered the opinion for the court.

This is an original proceeding instituted in this Court by Dallas County, acting through its Commissioners Court, to compel by mandamus the Honorable Charley Lockhart, State Treasurer, to permit the redemption for refunding of certain bonds heretofore issued by the county and held by him in his official capacity. The exact nature of the relief sought will be more fully stated after a recital of the history of the transactions leading up to the litigation.

On January 2, 1905, Dallas County issued bonds known as "Dallas County Road Bonds," hereinafter referred to as the first issue, in the principal sum of $500,000, due 40 years after their date. On June 10, 1905, the county issued bonds known as "Dallas County Road and Bridge Funding Bonds," hereinafter referred to as the second issue, in the principal sum of $159,000, due 40 years after their date. The order of the Commissioners Court authorizing the first issue stipulated that the bonds "may be redeemed at the pleasure of the county at any time after 10 years from their date." The order authorizing the second issue stipulated that "said bonds may be redeemed at the pleasure of the county at any time after five years from their date." At the time these bonds were issued the proper authorities acting for the State Permanent School Fund purchased $163,000 of the first issue and $45,000 of the second issue, and since the purchase that Fund has continued to own and still owns the same.

In October, 1935, Dallas County decided to redeem all of the bonds of both issues owned by the State Permanent School Fund and to accomplish such redemption in this manner; First, to pay off $14,000 of said bonds with moneys on hand in the sinking fund and available for that purpose. Second, the county proposed to redeem the remaining $194,000 of these bonds by refunding same in this manner: It entered into a contract with Donald O'Neil & Company whereby the latter agreed to make available at the office of the State Treasurer the money necessary to take up and pay for $194,000 of the original bonds, and to accept in lieu thereof refunding bonds

in like amount, bearing interest at lower rates than the original bonds. The contract provided that new bonds should be issued for the purpose of refunding and cancelling the original bonds and in lieu thereof. It was further provided that the County Judge of Dallas County should have charge of the refunding bonds pending their approval by the Attorney General and registration by the Comptroller. In conformity with the requirements of the original bonds, the Commissioners Court of Dallas County called the $208,000 of bonds for redemption and caused notice thereof to be given in writing to the State Treasurer more than thirty days before December 10, 1935, the date fixed for redemption.

On December 10, 1935, Donald O'Neil & Company made available at the office of the State Treasurer, in legal tender, and Dallas County on that date caused to be tendered to the State Treasurer the sum of $194,000, and a sufficient sum to take up and pay for the remaining $14,000 of bonds, with all interest due on all the bonds sought to be redeemed to that date. The State Treasurer was willing to accept payment of the $14,000 of bonds out of the interest and sinking fund money, but refused and still refuses to accept payment of any of the $194,000 of bonds sought to be refunded, or to surrender possession of same unless and until the State Board of Education first grants him permission so to do. This permission the State Board of Education has declined to give. Admittedly a proper tender was made and further tender would be useless. The refusal of the Treasurer to surrender the bonds renders it impossible to effectuate their refunding, for the Attorney General will not approve the refunding bonds, and neither will the Comptroller register same, so long as the original bonds are outstanding. The purpose of this proceeding is to enable the county to effectuate its plan of refunding. The specific relief sought is a writ of mandamus to the respondent, Charley Lockhart, State Treasurer, ordering and directing him to accept the payment tendered as aforesaid, which tender is kept alive, to cancel the $14,000 of bonds paid off out of the funds available for that purpose and to surrender and deliver to Dallas County, or its order, the remainder of said original bonds, when redeemed as aforesaid.

Each of the bonds of the first issue contained the following provision:

"The County of Dallas hereby reserves the right to redeem this bond at any time after ten (10) years from its date by paying principal and accrued interest, and, in case the same

shall be called in for redemption before maturity, notice thereof in writing shall be given to the Treasurer of the State of Texas by the County Treasurer of said County, at least thirty days before the date fixed for redemption, and should this bond not be presented for redemption the same shall cease to bear interest from and after the date so fixed for redemption."

Each of the bonds of the second issue contained the same provision, except the right to redeem accrued five years from the date of issue instead of ten years.

The statute under which the first series was issued, Chap. 72, Sec. 4, pp. 94-95, Regular Session Laws of the 23rd Legislature (1893) (Gamel's Laws, Vol. 10, pp. 524-525), provided that said bonds "* * * shall be redeemable in not less than 10 years and not more than 40 years from the date thereof * * *." The statute under which the second series was issued, Special Laws 29th Legislature (1905), Chap. 41, Sec. 24, provided that same should be issued subject to the provisions and requirements of, among others, Article 878, Rev. Stat. of Texas, 1895, which read as follows:

"All bonds issued under this law shall run not exceeding forty years, and shall be redeemable at the pleasure of the County at any time after five years after the issuance of the bonds, or after any period not exceeding ten years, which may be fixed by the Commissioners Court."

The public policy of preserving to counties issuing bonds the privilege of redemption, as reflected by the foregoing statutes, has been continuously carried forward in the statute law of this State. See Article 611, R. S. 1911, and Article 720, R. S. 1925. These articles are in substantially the same language as the one last above quoted.

By the orders authorizing the issuance of these bonds, by the recitals in the bonds themselves and by the statutes under which they were issued, the right of the county to redeem them is expressly reserved and conferred. That right is not questioned by respondent, but he would restrict its exercise to one method, namely, by the levy, assessment and collection of an ad valorem tax, and the application of the fund so provided to the payment or redemption of the bonds. There is no language in these orders, in the statutes or in the bonds themselves which restricts the rights of redemption to any particular method. The provision in the authorizing orders for the levy, assessment and collection of an annual tax to pay the interest and create a sinking fund sufficient to discharge the bonds at maturity is not a restriction upon the county's right to redeem. The effect

of the provisions is to pledge the tax revenue as security, but that does not prohibit the payment of the bonds from any other lawful source. Ballard-Hassett Company v. City of Des Moines, 207 Ia., 1351, 218 N. W., 20.

■ It remains to be determined whether the method of redemption by refunding sought to be exercised by relator is a lawful method.

The 27th Legislature, in 1901, four years prior to the issuance of any of the original bonds, amended Article 883 of Chap. 2, Title 25, R. S. 1895, to read as follows:

"Where bonds have been legally issued, or may be hereafter issued, by any county for any of the purposes above named, new bonds bearing the same, or a lower rate of interest, may be issued in conformity with existing law, in lieu thereof."

The emergency clause to that Act read as follows:

"There being now no law authorizing counties to fund bonded indebtedness issued since January 1, 1895, and many counties having now outstanding bonds issued since said date, which may be funded by issuing new bonds bearing a much lower rate of interest, creates an emergency * * *." General Laws of Texas, 27th Legislature, Ch. 13, pp. 16 and 17.

The authority there conferred has never been withdrawn, but has continued to exist to this date. It was brought forward in the Revision of 1911, as Article 657, and in the Revision of 1925, as Article 725, which reads as follows:

"Where bonds have been legally issued, or may be hereafter issued for any purpose authorized in this chapter, new bonds in lieu thereof bearing the same or a lower rate of interest may be issued, in conformity with existing law, and the commissioners court may issue such bonds to mature serially or otherwise, not to exceed forty years from their date."

The 42nd Legislature, in 1931 (ch. 163), enacted a rather comprehensive law which in its body provides that its short title shall be "Bond and Warrant Law of 1931." This entire act is brought forward in Vernon's Annotated Texas Statutes as Article 2368a. Section 7 thereof treats of funding and refunding by counties and cities of all outstanding legal debts and bonds. But no consideration will be given to that act, for it provides:

"Nothing in this Act shall be construed as to affect any bonds or warrants legally issued or authorized to be issued and for which a tax has been levied for the payment of interest and principal thereof, prior to the time when this Act shall

become effective and under the laws existing at that time; * * *."

·The above statutes, beyond doubt, vest in counties the right to issue refunding bonds, and do not restrict the exercise of that right to any particular refunding method. In McQuillin on Municipal Corporations, Vol. 5, Sec. 2282, p. 4826, it is stated: "However, statutory authority to issue new bonds in place of old ones does not restrict the issuance to bonds payable to the holders of the indebtedness to be refunded." The transactions contemplated by the contract between the county and Donald O'Neil & Company are those of a commonly employed refunding operation. They come squarely within the terms of the statutes. In entering into that contract the county was but exercising its statutory right to issue new bonds in lieu of the originals and bearing lower interest rates.

■ It is claimed that the contract between the county and Donald O'Neil & Company is in violation of Article 11, Section 7, of the Constitution of Texas, in that it constitutes the incurring of a debt without provision being made by the county for the levying and collecting of a sufficient tax to pay interest thereon and provide, at least, two per cent as a sinking fund. This contention is without merit. The contract stipulates that the money to be made available by Donald O'Neil & Company shall be used to take up and redeem the old bonds, and that the new bonds are not to be delivered until the old ones are cancelled. The only obligation incurred by the county is to issue and deliver refunding bonds, par for par, upon the cancellation of the originals. Bonds issued to refund valid outstanding bonds do not create a new indebtedness. City of Tyler v. L. L. Jester & Co., 97 Texas, 344, 78 S. W., 1058; 30 Texas Jur., p. 449, Sec. 249.

■ It is further claimed that the Board of Education has the option to purchase all bonds issued by any county; that it has not waived its option to purchase the refunding bonds sought to be issued by Dallas County, and that, if that option is exercised, then the money advanced to the county by Donald O'Neil & Company can be regarded as nothing but a loan made to the county. The option granted by Article 2673 to the State Board of Education to purchase county and municipal bonds must be held to be limited to the purchase of original bonds. Refunding bonds are not issued to be sold on the market as are original bonds. They cannot be issued until the originals are cancelled and, when issued, are not the property of the county or muni-

cipality issuing them, but immediately upon their issuance they become the property of the party having the right thereto by previous agreement. To give that article a construction that would make it applicable to refunding bonds would be to give to the Board of Education the power to prevent the making of any contract looking to the refunding of bonded indebtedness even when the original bonds are in the hands of a private investor. Such a construction cannot be adopted.

■ We are not called upon to determine whether the holders of original bonds are entitled to a preference right to contract for acquiring refunding bonds issued in lieu thereof. That question is not presented. What is sought to be done here is to prevent altogether the exercise of the right to redeem by refunding. The Board of Education has not consented to the redemption of the bonds on condition that the refunding bonds be delivered to it in lieu of the originals, but has refused altogether to give its consent to the redemption. The valuable right of redemption by refunding conferred upon the county by the Legislature is not subject to be defeated by the will of a bondholder.

It seems appropriate to quote this language from the opinion of the Court in Robertson v. Tillman, 39 So. Car., 298, 17 S. E., 678.

"* * * and, as we think that the word 'redemption', as used in section 10, means not merely that a new bond may be issued in exchange or as a substitute for an old bond, but also that a new bond may be issued for the purpose of obtaining the money necessary to pay or redeem the old bond, it is clear that Section 10 authorizes the issue of bonds for the purpose of obtaining money with which to pay bonds previously issued. Indeed, the most natural signification of the word 'redemption' implies payment, rather than exchange or substitution, though both modes may be resorted to. See 2 Rap. & L. Law Dict., 1079; 20 Amer. & Eng. Law, 607, 620, 621, 638."

Reference is made in the briefs to an act of the 39th Legislature (1925, p. 375), designated in Vernon's Annotated Texas Statutes as Art. 2787a. That act deals with bonds which have not matured and not with bonds which have matured or which have been called for redemption under a reserved privilege of redemption. It is somewhat significant, however, that the act clearly recognizes two methods of redemption in this language:

"* * * only such tax money as has been collected by virtue of tax levies made for the specific purpose of providing a sinking fund and paying interest on the particular bonds to be re-

deemed shall be expended in the redemption, taking up, or paying off of such bonds as provided in this Act; unless said bonds are being redeemed for the purpose of being refunded; * * *."

The question must be viewed in its larger aspect, keeping in mind the ruling legislative purpose in the enactment of the various statutes. All of the statutes with reference to redeeming and refunding are complementary to one another and should be considered together. Thus considered, they clearly evidence a legislative intent to vest counties and municipalities, as nearly as may be, with the same rights as other creditors, by providing a flexible, equitable and businesslike plan for financing their bonded indebtedness to meet changing conditions. No injustice is done the bondholder, for he purchases with full knowledge of the rights of the county or municipality.

The writ of mandamus will issue in accordance with the prayer of the petition.

Opinion adopted by the Supreme Court July 1, 1936.

Rehearing overruled July 22, 1936.