**TEXAS AGR. ASS'N OF EDINBURG et al. v. HIDALGO COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. 1 et al.**

**HIDALGO COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. 1 v. ABRAHAM et al.**

No. 9886.

Circuit Court of Appeals, Fifth Circuit.

Feb. 17, 1942.

Rehearing Denied March 10, 1942.

830

Paul G. Greenwood, of Harlingen, Tex., for appellants Texas Agr. Assn. of Edinburg and others.

Royce A. Oxford, of Edinburg, Tex., for Hidalgo County Water Control and Improvement Dist. No. 1.

Orville I. Cox, of Mission, Tex., for Louis Abraham and others.

Before FOSTER and McCORD, Circuit Judges, and DAWKINS, District Judge.

FOSTER, Circuit Judge.

This suit was brought by the Texas Agricultural Association of Edinburg, a voluntary association of taxpayers organized under the laws of Texas, and certain individual taxpayers, against Hidalgo County Water Control and Improvement District No. 1, hereafter called District, and the trustees of the Joe Abraham estate, hereafter called Trustees, to cancel a note in the amount of $21,048.82, given by the District to the Trustees, on the grounds it was invalid under the law of Texas and without consideration. The Trustees answered, denying the invalidity of the note, filed a counterclaim to recover on it, and prayed for a writ of mandamus to compel the levy and collection of taxes by the District to liquidate the note. The District Court aligned the District as a party plaintiff, made findings of facts and conclusions of law, epitomized in a memorandum opinion, 36 F.Supp. 314, held the note to be valid and gave judgment upon it. The judgment also ordered a mandamus to issue against the District to pay the judgment out of such funds on hand and not already pledged, applying funds that might be collected in the future or delinquent taxes not already pledged and ordering the District to levy a tax sufficient to discharge the remainder of the judgment but suspended execution of the judgment pending the appeal.

After the suit was entered but before it was decided the District filed an application in bankruptcy for a composition under the provisions of the Act of June 22, 1938, 11 U.S.C.A. § 403. Practically all the creditors, including the Reconstruction Finance Corporation from which a loan had been obtained, consented to the approval of the plan proposed. The Trustees did not consent to the plan and filed an answer praying that no relief be granted against them. An order was entered on the petition holding it was properly filed but suspending further proceedings pending the termination of this suit.

Although the printed transcript contains 356 pages the material facts may be somewhat briefly stated. As this is a suit in equity, we are not bound by the conclusions of the District Court and may look to the entire record in deciding the case.

The District is a political corporation, organized under the laws of Texas, for the purpose of aiding the farmers in the district by supplying water and other improvements. It has the right to issue bonds and levy taxes on the property in the district for the purpose of paying interest and creating a sinking fund for their ultimate liquidation, provided the proposition is submitted to the taxpayers of the district and is approved by them in an election held

for that purpose. Sec. 59(c) Art. 16 Constitution of Texas, Vernon's Ann.St. No election was held to validate the note in suit.

In 1934 the District was insolvent and its outstanding obligations, with interest, amounted to $2,088,458.52. This included 32 bonds, amounting to $35,735.22, held by the Trustees. An application was made to the Reconstruction Finance Corporation for a loan, which was granted in the amount of $902,500 on provision that 90% of the creditors holding security would accept 45.895% of the face value of their outstanding securities, without interest, the bonds to be deposited with the R.F.C. and refunding bonds maturing in thirty-three years issued to it for payment made for the deposited bonds, with the right to resort to all remedies attaching to the original bonds. The agreement provided that the District would not issue any other bonds having security similar to that of the new bonds or the old securities deposited with it for enforcing payment in the event the loan was not liquidated when due, without the consent of the R.F.C. and further provided that all the revenues of the District, taxes, charges, etc., be pledged to the liquidation of the new bonds, except sufficient to pay costs of operation and set up a reasonable reserve. All the security holders except the Trustees and two others holding securities of $2,500 deposited their securities. The Trustees declined to do so and on July 30, 1937, entered into a compromise agreement with the District, under which the bonds were to be deposited in escrow with the City Bank and Trust Co. of McAllen, Texas, to be turned over to the District on the payment of $14,686.40 in cash, the exact amount the Trustees would have received had they consented to the loan agreement, and the giving of the note, here in controversy, for $21,048.82. The cash was paid by the District with money obtained from the R.F.C., the note was executed and delivered, and the original bonds were surrendered and were deposited with the R.F.C. by the escrow bank by direction of the District. The agreement provided that the Trustees should be subrogated to and should retain all the rights, powers and privileges they had in the interest and sinking funds of the District, either as represented by delinquent taxes or by present or future tax levies to pay interest and create a sinking fund for the retirement of the indebtedness, the same as they then had or would have had if they still held the original unpaid bonds and coupons. The note contained similar provisions. Previous to this agreement, the District and the Trustees had entered into a written agreement under the terms of which the Trustees were to deliver their bonds to the R.F.C. and receive the money from it. By advice of counsel, the Trustees refused to sign it.

Appellants contend that the note created a new debt, which increased the indebtedness of the District and it is invalid because the proposition to issue it was not submitted to the voters for approval. On the other hand, the Trustees contend they had not consented to the loan agreement nor the plan of composition and are not bound by either; that the giving of the cash and note in exchange for their bonds was a refunding agreement not required to be submitted to the voters.

It may be considered settled in Texas that if a municipal corporation, such as the District herein involved, issues an obligation to be paid out of current revenues or out of revenues not derived from special taxes on the property in the District, the proposal to create indebtedness is not required to be submitted to the voters for approval. Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S. W.2d 629; Brazos River Conservation & Reclamation District v. McCraw, 126 Tex. 506, 91 S.W.2d 665. But in such cases the creditor is not entitled to mandamus to enforce the levy and collection of future taxes. Brady v. Hidalgo County Water Control & Improvement District, 127 Tex. 123, 91 S.W.2d 1058. Nor does the issuance of refunding bonds properly issued create a new debt. Dallas County v. Lockhart, 128 Tex. 50, 96 S.W.2d 60. Cf. Nueces County Fresh Water Supply Dist. v. Texas State Bank & Trust Co., Tex.Civ.App., 67 S.W. 427. However, if an obligation is issued by a water and improvement district to be paid out of taxes to be levied in the future the proposition requires the approval of the voters, in conformity to the constitution and statutes of Texas. Austin Mill & Grain Co. v. Brown County Water Imp. Dist. No. 1, Tex.Civ.App., 128 S.W. 2d 829. If provision is not made for payment at the same time a note is given the note is ultra vires and invalid. City of Terrell v. Dessaint, 71 Tex. 770, 9 S.W. 593; McNeal v. City of Waco, 89 Tex. 83. 33 S.W. 322.

Evidence in the record compels the conclusion that the Trustees were fully informed of the provisions of the agreement between the District and the R. F. C. for the loan and knew that the District had no other source from which to pay the cash amount of the settlement except by borrowing the money from the R.F.C., which required the deposit of the original bonds. It is immaterial whether the bonds were turned over to the District by the escrow bank or sent to the R. F. C. by direction of the District. In either event the old bonds were extinguished. It is true the agreement between the District and the Trustees did not increase the old indebtedness. But the obligations of the District had been scaled down from over $2,000,000 to $902,500. With the deposit of the Trustees' bonds with the R. F. C. those bonds were scaled down the same as all the other bonds so deposited. It is plain that unless the loan agreement with the R. F. C. was consummated the old bonds were practically valueless. We entertain no doubt that the giving of the note created a new debt and increased the indebtedness to the amount of the note. The delinquent taxes that might be collected and the taxes that might be properly levied in the future were pledged to the R. F. C. for the retirement of the refunding bonds and there would be nothing available from those sources to liquidate the note for many years to come. Clearly it was error to award a mandamus in this case. Moreover, we think the judgment should go further. It is plain the Trustees endeavored to compel payment of their debt in full by refusing to consent to the reorganization agreement for the purpose of securing a preference over a large majority of other creditors of the same class. The Trustees obtained their share of the loan in cash and endeavored to bind the District to pay the debt in full through the execution of the note in suit. There is no equity in the claim that would warrant a departure from the settled rule of law in Texas. The case of Nueces County Fresh Water Supply Dist. v. Texas State Bank & Trust Co., supra, is not in point. As the note was to be paid, in part at least, by taxes to be levied in the future, the proposition to execute it was required to be approved by the taxpayers in an election held for that purpose. As this was not done it follows that the note is void.

Furthermore, we must take notice of and consider the pending application for a composition. The fact that the creditors scaled down their claims would not prevent their accepting the composition. American Nat. Bank v. City of Sanford, 5 Cir., 112 F.2d 435. It is reasonable to presume that, with such a large proportion of the creditors accepting, the plan of composition will be ultimately approved. In that event the Trustees will be bound by the judgment, whether they consent or not, and will be entitled to the amount they received in cash and no more.

The judgment appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion. Appellees, Louis Abraham et al., Trustees of the Joe Abraham Estate, to pay all costs.

Reversed and remanded.