**STATE NAT. BANK OF EL PASO v. TARRANT COUNTY.**

No. 14763.

Court of Civil Appeals of Texas. Fort Worth.

June 28, 1946.

Rehearing Denied Sept. 13, 1946.

McCall, Parkhurst & Crowe and W. P. Dumas, all of Dallas, for appellant.

Samuels, Brown, Herman & Scott and Jesse M. Brown, all of Fort Worth, for appellee.

SPEER, Justice.

State National Bank of El Paso, Texas, a National Banking Corporation, sued Tarrant County, Texas, in a district court of Tarrant County, for $1,045 as accrued interest on a series of bonds theretofore issued by the defendant county and for a judgment of the court declaring that Tarrant County does not have the right to redeem the bonds held by the plaintiff bank prior to the respective maturity dates thereof, and further, that the county is obligated to pay interest on each of said bonds at the rate therein provided until it matures according to its terms and reading.

The petition is necessarily lengthy, setting out various orders of the Commissioners Court of Tarrant County, ordering the issuance of $1,600,000 of Road and Bridge Bonds in 1912, the conditions and reservations therein and their maximum maturity dates. That pursuant to an optional privilege reserved to defendant Tarrant County in said bonds, the county called said bonds for payment at a named date in 1922; that the county issued at the last named date $1,200,000 Funding Road and Bridge Bonds, and, with the proceeds thereof and funds on hand, paid and redeemed all of the 1912 bond issue; that the Funding Road and Bridge Bonds contained no provision for an optional redemption, payment, or refunding at any time prior to the maturity dates set out in each of the respective bonds.

Allegations were made that plaintiff bank had, in due course of business, acquired 22 of these $1,000 funding bonds issued in 1922; that because of the rate of interest provided therein, and because they were long-time obligations approved by expert bond attorneys, the bank had paid a premium in their purchase; that defendant county had; in 1944, attempted to call for payment all of the remaining unpaid bonds of said 1922 issue and had given notice thereof, had refused to pay accrued interest on the bonds held by plaintiff since the date of said notice, and that the amount sued for had accrued in interest on said bonds since the county ceased paying. Prayer was for the recovery of accrued interest and a declaratory judgment, as above indicated.

The answer of defendant Tarrant County consisted of many special exceptions which apparently were not urged before the trial court, many admissions of fact allegations made by the plaintiff, a general denial, and lengthy special defenses asserting its legal rights to redeem and pay off the funding bonds held by plaintiff, included in the 1922 funding bond issue.

The case was tried to the court without a jury, and the plaintiff bank has appealed from an adverse judgment.

Appellant presents four points of error, but in its brief concedes that "The only question in this case is whether the Tarrant County Road and Bridge Funding Bonds, dated November 1, 1922, issued by said county under authority of Article 657, Chapter 3, Title 18, Revised Statutes of 1911, are subject to redemption 'at the pleasure of the county.'" The appellant, plaintiff below, contends that said bonds are not redeemable, and appellee, defendant below, insists that they are redeemable.

There is no controversy between the parties as to the facts which control this case; they are all stipulated. In the main they consist of documentary evidence such as a call for and the returns of an election authorizing the issuance of the first series of Road and Bridge Bonds in 1912, the provisions of the bonds issued at that time, the subsequent exercise by the county of its option to refund the 1912 bonds by another issue in 1922, the notice by the county and the issuance of the funding bonds in 1922, and the resolution of the commissioners court passed in 1944 to refund the 1922 issue, the notice thereon, and the refusal of appellant to surrender the bonds held by it (a part of the 1922 issue), and that since appellee gave notice of its intention to call in and pay those bonds and ceased to pay interest, $1,045 in accrued interest is unpaid on appellant's bonds.

It seems to us that the precise question here involved has not been before our courts, although the applicable laws have been in force for more than fifty years.

There are decisions to be found which may be said to present analogies from which we may reason to a conclusion in the instant case. After a painstaking study of this record and the applicable laws we have decided that appellant's contentions cannot be sustained, and it follows that the take-nothing judgment of the trial court must be upheld.

■ The public policy of this state, as reflected by statutory provisions, has for many years been that counties were authorized to borrow money and evidence the obligation by the issuance of bonds for purposes designated by legislative enactments, especially to construct and maintain roads and bridges and to preserve to such counties the privilege of redeeming their obligations under conditions named by the Legislature. This is evidenced by the constant and continuous expressions of the legislative intent. All such statutory provisions must be considered together unless expressly forbidden by the law. The laws are, and should be, flexible and equitable enough to enable counties to conduct their financial affairs in a business-like way to meet changing conditions. No injury is done to those who purchase the bonds because they must know of the rights of the county when they purchase. Dallas County v. Lockhart, Treasurer, 128 Tex. 50, 96 S.W.2d 60. The above announced rule is generally reflected in other jurisdictions as stated in 43 Amer.Jur. 477, sec. 263 et seq.

Article 877, Revised Statutes of 1895, provided that counties could issue bonds to construct and maintain roads and bridges; that article in a slightly enlarged form became Article 610 of the 1911 Statutes and later became Article 718 of the 1925 Statutes, in Chapter 2, Title 22. Article 878, Revised Statutes of 1895, provided that bonds so issued should run not to exceed 40 years and should be redeemable at the pleasure of the county at any time after five years from their date and after any period not exceeding 10 years, which may be fixed by the commissioners court. Article 878, 1895 Statutes, above mentioned, was brought into the 1911 revision as Article 611 and into the 1925 revision in Chapter 2, Title 22, as Article 720, in the same language as originally passed. Article 883, 1895 Statutes, provided that when bonds had been legally issued for any of the purposes above named (in Article 877, 1895 Statutes) new bonds "in conformity with this law may be issued in lieu thereof." Last named article (1883, 1895 Statutes) became Article 657 in the 1911 revision and reads slightly different. As revised it provides:

"Where bonds have been legally issued, or may be hereafter issued, by any county for any of the purposes named in article 610 (1911 revision), new bonds bearing the same or a lower rate of interest may be issued, in conformity with existing law, in lieu thereof."

Articles 877, 1895 revision, and 657, 1911 revision, became Article 725, 1925 revision. It is also found in Chapter 2, Title 22, in slightly changed but substantially the same language. It now reads:

"Where bonds have been legally issued or may be hereafter issued *for any purpose authorized in this chapter*, new bonds in lieu thereof bearing the same or a lower rate of interest may be issued, in conformity with existing law, *and the commissioners court may issue such bonds to mature serially or otherwise, not to exceed forty years from their date.*" The parts we have italicised were changed or added to the 1925 revision of that article. We have made this somewhat tedious reference to the various articles of the several revised statutes of this state as indicative of the policy and intention of the Legislature to perpetuate the early provisions of our law in these respects. As a further evidence that there has been no legislative intent to lessen the rights of counties in handling their financial affairs, in the "Final Title" of the 1925 Statutes by Sec. 2 it is provided that existing laws of a general nature, in force at the time the 1925 Act should take effect, which are not included therein and which were not expressly continued in force by the Act, were repealed. But by section 3 it was provided: "That the repeal of any statute, or any portion thereof, by the preceding section, shall not affect or impair any act done, or right vested or accrued, * * *."

The parties must concede that the Road and Bridge Bond issue of 1912, and the sub-

sequent Funding Road and Bridge Bond issue of 1922, were both legal. If this were not true appellant would have nothing of value in the bonds and appellee would owe nothing. The 1912 issue was for road and bridge purposes, authorized by Article 610, 1911 Statutes. Article 611, same Statute, provides, among other things, for the redemption of those bonds by the county at its pleasure within certain limitations.

Article 657, 1911 Statutes, previously quoted, begins with the expression, "Where bonds have been legally issued." As pointed out above, these bonds were legally issued in 1912. The article continues, "or may be hereafter issued, by any county for any of the purposes named in article 610, new bonds * * *" may be issued in conformity with existing law in lieu of the former ones. By virtue of this statutory provision the 1922 bonds in controversy were issued in lieu of those under date of 1912.

It is fundamentally true that since the debt evidenced by the 1912 issue was still unpaid and owing by the appellee a renewal of that obligation by putting another one of its obligations or promises to pay "in lieu" thereof, meaning instead of its first obligation or evidence of its debt, did not create a new debt owing by appellee to appellant, but it remained the same debt incurred for money with which to build and maintain roads and bridges. This debt was created by the issuance of the 1912 bonds, which was a purpose authorized by Article 610, 1911 Statutes. As we view it that debt will continue to be one incurred for the authorized purpose until it is paid, irrespective of the number of times the appellee renews it by funding or refunding bonds which represent the same debt. Dallas County v. Lockhart, Treasurer, 128 Tex. 50, 96 S.W.2d 60 (63).

The codification of our statutes in 1925 added nothing to the vested rights and privileges of the parties under the former statutes. The language used in Article 725, 1925 Statutes, which is slightly different from what was in Article 657, 1911 Statutes, emphasizes its special application to the rights of the parties to this suit under the former statutes. Appellant apparently dismisses the provisions of Article 725, 1925 Statutes, from a consideration in this case because its provisions refer to bonds "issued under *this* chapter." Of course, the funding bonds of 1922 were not issued under "this chapter" (Chapter 2, Title 22, 1925 R.C.S.). That chapter and title had not been created at the time, but it will be observed that Chapter 2, Title 22, supra, does contain Article 718 which *authorizes* the issuance of bonds for road and bridge purposes, and Article 720 which provides for the terms and redemption of bonds issued under that chapter, and Article 725 provides, in part: "Where bonds have been legally issued or may be hereafter issued for any purpose *authorized* in this chapter * * *." (Emphasis ours.) If the phrase "for any purpose authorized in this chapter" is applicable to the opening phrase of "Where bonds have been legally issued" it becomes nonetheless applicable because Article 718, 1925 Statutes, which *authorizes* the issuance of bonds for road and bridge purposes is in fact in the same Chapter 2, Title 22, 1925 Statutes, with Article 725. Bearing in mind that appellee's debt, as incurred in 1912, for funds with which to build and maintain roads and bridges, was still unpaid, although evidence of the debt was renewed and extended in 1922, it is our belief that under the applicable law appellee has never lost its right to call for and redeem its funding bond obligation which stands in lieu of its original bonds theretofore legally issued.

The cases cited by the parties which, as indicated, contain reasoning helpful to us, although not upon the precise point involved here, are: Dallas County v. Lockhart, State Treasurer, 128 Tex. 50, 96 S.W.2d 60; Cochran County v. Mann, Atty. General, 141 Tex. 398, 172 S.W.2d 689; Bexar County v. Sellers, Atty. General, 142 Tex. 290, 178 S.W.2d 505; Road Dist. No. 1, Jefferson Co. v. Sellers, Atty. General, 142 Tex. 528, 180 S.W.2d 138; and Gavin v. Potter County, Tex.Civ.App., 187 S.W.2d 705, writ of error refused.

In case of Dallas County v. Lockhart, supra, Dallas County had, in 1905, issued a series of bonds known as "Dallas County Road and Bridge Funding Bonds" (this would indicate that it had previously issued "Road and Bridge Bonds"). The funding

bonds provided that the county could redeem them at its pleasure after 10 years. The county, relying upon the provisions of Article 878, Revised Statutes of 1895, which is the same as Article 611, Revised Statutes of 1911, and having on hand certain available funds, issued refunding bonds in 1935 to cover the difference between the cash on hand and the unpaid balance of the funding bond issue, gave notice and requested the surrender of the outstanding bonds. The state had acquired certain of the funding bond issue, and the state treasurer declined to surrender the state's holdings upon the theory that the county could not redeem the funding bonds in the manner it proposed. The court held that the order of the court under which the funding bonds were issued, the bonds themselves as well as the statutes under which they were issued, provided for their redemption at the pleasure of the county, and that it did not concern the treasurer as to what manner of payment the county employed. The writ of mandamus was issued requiring the surrender of the bonds upon payment by the county.

Cochran County v. Mann, Atty. General, supra [141 Tex. 398, 172 S.W.2d 690] was likewise a mandamus proceeding to require the Attorney General to approve an issue of refunding bonds to take up a former issue by the county. Cochran County had voted upon, and the commissioners court had issued, a series of bonds to build a court house in 1924. The issue was authorized under Article 610, Revised Statutes of 1911, and was subject to the provisions of the terms and redemption provided in Article 611, 1911 Statutes. The commissioners court made no provisions in its orders or bonds for a privilege of redemption before maturity. The court's opinion was in July 1943, and says, "The county now proposes to issue new bonds for the purpose of refunding the outstanding, unpaid bonds." The Attorney General had refused to approve the refunding bonds because, in his opinion, the county had no right to redeem or refund the former bonds at that time. After discussing the applicable Statutes of 1911 and those same statutes now found in our 1925 Statutes, bearing upon the same questions, the writ was issued.

Bexar County v. Sellers, Atty. General, supra, was also an original mandamus proceeding. Bexar County, in 1925, under authority of Chapter 1, Title 18 (obviously Articles 610 and 611 of Revised Statutes of 1911), issued a series of bonds, called "Bexar County Juvenile Home Bonds." In 1943 the commissioners court issued refunding bonds to take up the original series of bonds. These refunding bonds of 1943 matured serially from 1943 to 1962 and contained this language: "With option of redemption on any interest payment date on or after October 10, 1953, upon thirty days notice." The county next proposed to issue a series of refunding bonds dated February 15, 1944, to take up the funding bond issue of 1943. The Attorney General refused to approve the refunding bonds of 1944, and the writ of mandamus was denied. The court cited its holding in the Cochran County case, above mentioned by us, in which it was pointed out that under the provisions of Article 720 (1925 Statutes) if when the bonds are issued (the funding bonds of 1943) the commissioners court does not evidence its election as to when the bonds may be redeemed, they automatically become redeemable at any time after five years from the date of issue, but the commissioners court may postpone the date after which the bonds become redeemable not to exceed 10 years from date of issuance. The court held that, with the election made by the commissioners court in the 1943 issue, they were not redeemable before 1953. It was further held in that case that the bonds of 1943, which refunded those of 1924, under 1911 Statutes, were "bonds issued under this chapter" within the meaning of Article 720, Revised Statutes of 1925. The writ was denied because the 1943 refunding bonds were not redeemable in 1944.

Road District No. 1, Jefferson County, v. Sellers, Attorney General, supra, was also an application for mandamus requiring the approval of refunding bonds. In that case the writ was denied because the bonds sought to be redeemed by refunding bonds were originally issued for a purpose not authorized by Article 611, 1911 Statutes, but by a special law enacted by the

Legislature, and because the bonds sought to be refunded were not issued under the chapter that embraced Article 611, 1911 Statutes, it was held that the Attorney General was correct in his refusal to approve the refunding bonds.

The other cited cases bear to some extent upon the issue before us as do those above pointed out, but because of the facts upon which they are predicated, they do not convince us that the appellee in the instant case should be denied the privilege to refund the "Road and Bridge Funding Bonds" issued in 1922, about which this controversy arose.

For the reasons stated the judgment of the trial court should be and is by us affirmed.