# NORTON v. TOM GREEN COUNTY.
## No. 9453.

Court of Civil Appeals of Texas. Austin.
Oct. 4, 1944.

Rehearing Denied Oct. 25, 1944.

Collins, Jackson, Snodgrass & Blanks, of San Angelo, and W. P. Dumas, John D. McCall, Clarence E. Crowe, and Millard Parkhurst, all of Dallas, for appellant.

W. A. Johnson, of San Angelo, and Victor W. Bouldin, and Vinson, Elkins, Weems & Francis, all of Houston, for appellee.

McCLENDON, Justice.

This suit involves the right of Tom Green County, under Art. 720, R.C.S., 1925, to redeem prior to maturity dates the outstanding portion of its Courthouse construction bonds issued in 1927, and payable serially in one to forty years. The case is ruled by the decision in Cochran County v. Mann, 141 Tex. 398, 172 S.W.2d 689, 690.

The bonds were issued under the provisions of Chapters 1 and 2 of Title 22, Arts. 701 to 725, inclusive, of R.C.S. of 1925, and so stated in the face of the bonds and in the various proceedings of the Commissioners' Court in connection with their issue. All such proceedings were in accordance with statutory provisions, including the approval by the Attorney General. Neither in the bonds nor in any of said proceedings was there any reference to whether they were redeemable (callable) or not redeemable prior to their respective maturity dates. The entire issue ($294,000) was sold upon competitive sealed bidding to Brown-Crummer Co., at par, accrued interest, and a premium of $12,178, the bids ranging downward from that figure to $6,027 premium. The bid of Brown-Crummer Co. contained the statement: "all maturities without option of prior payment." The trial court found upon sufficient (if not in fact conclusive) evidence, that both parties to the contract of sale of the bonds "believed that said bonds were not optional," that the sales price was the fair and reasonable market value of the bonds as nonoptional bonds, and that they could not have been sold at a premium if the purchasers had believed them to be optional after five years; that the County by its acts led the purchasers of the bonds to believe that they were not optional, "and thereby enriched itself $12,178." December 15, 1942, the County made a contract with Christie & Co. whereby the latter agreed to assist the former "in making the bonds available for refunding into new refunding bonds bearing a lower rate of interest," and giving Christie an option to buy the refunded bonds at par and accrued interest; notice of acceptance of which option had been given. July 12, 1943, the Commissioners' Court passed an order directing calling of the bonds at par and accrued interest on October 10, 1943, and stating that the bonds would not bear interest after that date. Notice of the call was mailed to the banks and the State Treasury, where the bonds were made payable, and to all the bondholders known to the County; and a copy of the notice was published in two financial journals of nation-wide circulation. Appellant was the owner of five $1,000 bonds, maturing in 1948, 1953 and 1954, which she had purchased in 1938 and 1939 for par, accrued interest and premiums aggregating $1,147.37. The suit was brought by her against the County seeking a declaratory judgment to the effect:

That the County does not have the right (a) to redeem the bonds prior to their respective maturity dates; nor (b) to require delivery of them for payment at par from funds belonging to Christie, or to cease paying interest Oct. 10, 1943, upon failure of such delivery; nor (c) to redeem at less than their market value at the time of call for redemption; nor (d) at a price less than she paid for them; (e) that the right to redeem, if it exists, is conditioned on paying the pro rata part of premiums received by the County plus interest; (f) that the County has no right to disburse her portion of the interest and sinking fund for any purpose except to pay her bonds and the interest thereon at maturity; and (g) that she have general relief.

Appellant has briefed the case under seven points which we will consider in their numerical order.

The first point is to the effect that Art. 720 does not apply because the bonds were voted to mature serially under Art. 703. This point was directly involved in the Cochran County case, the opinion stating that the bonds sought to be refunded were serial bonds; some of which were issued before and some after the 1925 codification changed the wording of Art. 720 (Art. 611 of the 1911 codification) from *"shall* be redeemable," etc., to *"may* be redeemable," etc. In this connection the Supreme Court held: "We consider that this change in the wording of the statute, as

brought about by the recodification in 1925 made no change in the meaning or effect of the statute, and that it is therefore unimportant on the question here under consideration." This holding is binding on this court, and is conclusive of the issue.

■ The second and third points, which we consider together, are in effect:

2. The approval by the Attorney General under Art. 715, R.C.S., precluded redemption, there being no element of fraud or forgery involved.

3. The County is estopped from redeeming because of its acts in leading the purchasers (to their detriment) to believe the bonds were not optional, and receiving the benefits thereof.

There is nothing in the certificate of the Attorney General to indicate whether the bonds were redeemable prior to their maturity dates. The same is true, as already stated, with reference to the proceedings under which the bonds were issued. The following holding in the Cochran County case is controlling of these issues: "The above statute, being in effect at the time the bonds were issued, was read into and formed a part of the contract, and purchasers of the bonds were charged with notice thereof and are presumed to have bought the bonds in recognition thereof."

An inescapable corollary to this holding is that since the provisions of Art. 720 are read into the bonds and the contract under which they are acquired, no act of the Attorney General or of the Commissioners' Court can operate as an estoppel against the County to defeat the latter's rights under this article. We are not here concerned with what might have been the rights of the original purchasers or their assigns in an action seasonably brought against the County predicated upon mutual mistake. The sole issue here is the right of the County under Art. 720 to redeem the bonds.

■ The fourth and fifth points are to the effect that the act of the Commissioners' Court in passing the order of redemption was (4) legislative, and violative of the contract clause, Art. 1, Sec. 10, of the Federal Constitution; or (5) it was judicial and therefore void "because it changes the previous order authorizing the issuance of the bonds long after the expiration of the term at which the bond order was entered and deprives the appellant of her property without a hearing."

It is clear we think that the order was neither legislative nor judicial in character, but merely a ministerial act on the part of the Commissioners' Court in administering the fiscal affairs of the County. The right to make the order was absolute, and no advance notice thereof or hearing thereon was necessary. Nothing the bondholders could have urged at such hearing would have availed to defeat the right. No issue is raised or could properly be raised as to the sufficiency of the notice of the order after it was made.

■ The sixth point reads: "The act of the County in calling the bonds to be taken up with money belonging to B. V. Christie & Company would constitute a forced sale of Appellant's bonds to said Company at a price (par) arbitrarily determined by County, thus depriving Appellant of her property without due process of law, in violation of the Due Process Clause (Art. XIV) of the Federal Constitution."

The right to redeem being absolute, we think the source of the fund from which the redemption was made was immaterial, so long as there was no illegal diversion of funds which would authorize the County, a taxpayer, or the one providing the fund to recover it from the bondholding recipient. To that extent only (if at all) the bondholders had any interest in the source of the fund. Moreover, the plan adopted by the County in this instance was not essentially different from that which had the express approval of the Supreme Court in Dallas County v. Lockhart, 128 Tex. 50, 96 S.W.2d 60.

■ Point 7 reads: "By Articles 716a, 717e and 725a, Vernon's Annotated Texas Statutes, the provision made for the payment of certain similar bonds was expressly validated and consequently the Commissioners' Court in 1943 was clearly without authority to set aside the provision made for the payment of said bonds at the time same were issued and sold."

We find nothing whatever in these articles which has any bearing upon the issues in this case.

In view of the conclusive effect of the Supreme Court's holding in the Cochran County case upon the issues presented in this case, we have deemed it unnecessary to elaborate upon the several points urged by appellant, or to cite further authorities bearing thereon. We have, however, made what we regard a full statement of the

material facts, and have set forth all the points urged by appellant, either in haec verba or in substance.

The final conclusion of law of the trial court reads: "That this Court is without any authority to grant Plaintiff any relief, although she will be greatly damaged by the action of the Defendant County in calling said bonds." In this conclusion we concur.

The trial court's judgment is affirmed. Affirmed.