**W. B. BURKE and Royce Tankersley,**
**Appellants,**

v.

**Sam B. THOMAS, County Judge et al.,**
**Appellees.**

No. 10336.

Court of Civil Appeals of Texas.

Austin.

Nov. 30, 1955.

Rehearing Denied Jan. 4, 1956.

Clyde Vinson, Cliff Tupper, San Angelo, for appellants.

Wilson, Wilson & Logan, San Angelo, for appellees.

ARCHER, Chief Justice.

Appellants sued appellees, as the Commissioners' Court of Irion, bringing the suit as citizens and property tax paying citizens of Irion County, Texas, for themselves and all other such property tax paying citizens of Irion County, to enjoin the issuance and sale of bonds for the purpose of the construction of farm to market and lateral roads in Irion County, authorized at an election theretofore held at which a majority of the property tax paying citizens voted in favor of the issuance of such bonds, but less than two thirds of such voters voted in favor thereof. Appellants also sought a temporary injunction against the issuance and sale of such bonds and a hearing was had on such petition for temporary injunction and after such hearing the court denied appellants the temporary injunction. From this order this appeal is perfected.

This appeal is predicated on two points

"Point One: The Commissioners' Court of a county may not lawfully

issue bonds and levy a tax against the property of a county, for the purpose of building farm-to-market and lateral roads, where the qualified property tax paying citizens of the county, at an election called for such purpose, have by less than two thirds vote authorized the same.

"Point Two: Article 7048a, Revised Civil Statutes of Texas, which purports to authorize the Commissioners' Court of a county to issue bonds for the purpose of constructing farm-to-market and lateral roads, after an election called for such purpose upon a vote of a majority but less than two thirds of the qualified property tax paying citizens of the county, is violative of the provisions of the Constitution."

Appellants are not charging any irregularity in the manner in which these elections were held, but are contending that Article 7048a is unconstitutional as being in contravention of Article 3, Section 52, of the Constitution, Vernon's Ann.St. and that a tax can be levied and bonds issued for the purpose of constructing farm to market and lateral roads only after a vote of two thirds of the qualified tax paying voters.

Appellees contend that Article 7048a is constitutional and further assert that, even assuming the unconstitutionality of this statute, the appellants are not entitled to injunctive relief.

No question is raised as to the manner in which the two elections were held, and all pertinent facts are stipulated, and as stated by appellants the disagreement between the parties is the determination of the meaning of the 1904 Amendment to Article 3, Section 52 of the Texas Constitution.

Appellees take the position that under the Constitution and laws of Texas the Commissioners' Court could properly and lawfully issue the bonds and levy the tax, for the purpose of building farm to market and lateral roads, after the election at which a majority vote was cast in favor of the bonds.

We believe Article 7048a, Vernon's Ann. Civ.St., is constitutional. This article reads in part as follows:

"Section 1. From and after January 1, 1951, no State ad valorem tax shall be levied upon any property within the State for general revenue purposes, except as hereinafter provided. * * *

"Sec. 2. From and after January 1, 1951, the several counties of the State be and they are hereby authorized to levy, assess and collect ad valorem taxes upon all property within their respective boundaries for county purposes, except the first Three Thousand Dollars ($3,000) value of residential homesteads, not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of the State, provided the revenue therefrom shall be used as provided in this Act for the construction and maintenance of Farm-to-Market and Lateral Roads or for Flood Control and for these two (2) purposes only. * * *

"Sec. 9. If a majority of the qualified property taxpaying voters, voting at said election, shall vote in favor of said tax, then the same shall be annually levied, assessed and collected as other county ad valorem taxes are levied, assessed and collected.

"Sec. 10. After an election has been held under the provisions of Sections 7 and 8 of this Act, at which election a majority of the qualified, property taxpaying voters, voting at said election, voted in favor of the tax, the Commissioners Court may issue either negotiable county bonds or county time warrants for the purpose of the construction and/or improvement of Farm-to-Market and Lateral Roads, or for the purpose of constructing permanent improvements for Flood Control purposes; provided, however, that any such bonds or warrants must have been authorized by a majority of the qualified property taxpaying voters who

have duly rendered the same for taxation voting at an election duly called by the Commissioners Court, such bonds and warrants to be issued and the taxes to be levied and collected in payment thereof in accordance with the provisions of Chapter 1, Title 22, Revised Civil Statutes of Texas, and provided further that each proposition shall be separately submitted to the voters at such election."

Article 11, Section 2 of the Constitution is as follows:

"The construction of jails, courthouses and bridges and the establishment of county poorhouses and farms, and the laying out, construction and repairing of county roads shall be provided for by general laws."

In 1948, Article 8, Section 1 of the Constitution was amended by Section 1-a and states in part:

"From and after January 1, 1951, no State ad valorem tax shall be levied upon any property within this State for general revenue purposes. From and after January 1, 1951, the several counties of the State are authorized to levy ad valorem taxes upon all property within their respective boundaries for county purposes, except the first Three Thousand Dollars ($3,000) value of residential homesteads not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of this State, provided the revenue derived therefrom shall be used for construction and maintenance of Farm-to-Market Roads or for Flood Control * *."

Article 8, Section 9 of the Constitution in 1906 provided in part:

"The State tax on property, exclusive of the tax necessary to pay the public debt, and of the taxes provided for the benefit of the public free schools, shall never exceed thirty-five (35) cents on the one hundred dollars valuation; and no county, city or town shall levy more than twenty-five (25) cents for city or county purposes, and not exceeding fifteen (15) cents for roads and bridges * * * and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property tax paying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed fifteen (15) cents on the one hundred dollars valuation of the property subject to taxation in such county. * * * This section shall not be construed as a limitation of powers delegated to counties, cities or towns by any other section or sections of this Constitution."

The precise question in this case is whether the bonds which Irion County proposes to issue for the purpose of constructing farm to market and lateral roads within the county were lawfully authorized by the Legislature upon a majority vote of the qualified voters of the county pursuant to art. 11, Sec. 2 of the State Constitution which directs the Legislature to provide, by general laws, for the " * * * laying out, construction and repairing of county roads * * *."

The Legislature granted this authority in 1949 when it enacted present art. 7048a, V.A.C.S., which, in part, provided that a county might issue negotiable bonds for the purpose of constructing or improving farm to market and lateral roads if authorized by a majority of the qualified voters of the county voting at an election held as therein provided.

Appellants contend that this legislative grant of authority is void because in contravention of art. 3, Sec. 52 of the State Constitution, as amended in 1904, which provides, in part, that a county may not under legislative authority issue its bonds for the purpose of "The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes

* * *." except upon a "vote of a two thirds majority of the resident" qualified voters.

Appellants' position, as we understand it, is that farm to market roads fall *exclusively* within the provisions of art. 3, Sec. 52, supra, in that they are "macadamized, graveled or paved roads" and that they are not "county roads" within the meaning of art. 11, Sec. 2, supra.

Farm to market roads are mentioned but not defined in art. 8, Sec. 1–a of our Constitution and we have not been cited to nor have we found a statute which defines a farm to market road as a paved road or a road of any particular composition. Art. 7083a, V.A.C.S., prescribes many requisites of a farm to market road but we find no requirement that the road be paved.

It seems then that we might rest our opinion upon the ground that farm to market roads are not necessarily paved roads and appellants' contention that art. 3, Sec. 52, supra, must be followed in issuing bonds for the construction of paved roads would fail because we cannot say as a matter of law or from any fact found in this record that the proceeds of these bonds would be used for the construction of paved roads.

We are not willing, however, to place our decision upon such narrow ground.

It is our opinion that the term "county roads" as used in art. 11, Sec. 2, supra, is broad enough to include permanent type or paved roads.

■ If appellants' contention were sustained then Sec. 2 of art. 11, supra, would be repealed, by implication, by Sec. 52, of art. 3, since the latter provision by express terms relates to unpaved as well as paved roads.[1] Implied repeals are not favored and are seldom applied to constitutional provisions and never unless there is irreconcilable conflict between the pro-

visions which it is impossible to harmonize by reasonable construction.

The parties discuss and cite several cases which discuss the reasons for and effect of the 1904 (1903) Amendment to Sec. 52, art. 3 of the Constitution.

Sec. 52, art. 3 as originally adopted in 1876, simply forbade the Legislature from authorizing any political subdivision to lend its credit. Sec. 2, art. 11 was also in the 1876 Constitution in its present form. Notwithstanding Sec. 52, art. 3, Sec. 2, art. 11 was construed to authorize a county to issue bonds for the purposes stated if authorized by general law. Robertson v. Breedlove, 61 Tex. 316, Mitchell County v. City Nat. Bank, 91 Tex. 361, 371, 43 S.W. 880.

The 1904 (1903) Amendment to Sec. 52, art. 3 contained the same prohibition referred to above but it contained a proviso that upon two thirds vote of the qualified voters residing in a political subdivision or district which might include several counties bonds of such district could be issued for the purposes stated up to one fourth of the assessed valuation of the real property in such district subject to some restrictions.

The effect of this amendment was thus stated by Chief Justice Phillips in Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 219, 191 S.W. 553, 555, as follows:

"The amendment of 1903 to section 52 of article 3, which includes the subdivision quoted at the beginning of this opinion, was adopted at a later time than any of the provisions above referred to. Upon the general subject of road improvement, it marked a radical departure from the previous policy of the State. It was the response to a public demand that provision be made whereby the State, and every section of the State, might be supplied through voluntary taxation

---

[1] This is upon the assumption that "graveled" roads are not paved roads. See, however, Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. at page 223, 191 S.W. at page 556, holding roads paved with shell are "paved roads."

with adequate, durable and permanent roadways. The former bounds of taxation for their construction and maintenance were set aside, and the political subdivisions named, in addition to all other debts, were, under legislative provision, given authority upon a requisite vote to issue bonds in the liberal amount of one-fourth of the assessed valuation of the real property of such districts. Not only was such authority given to counties and subdivisions of a county, but any number of adjoining counties were empowered to form themselves into a taxing district as a means of securing the improvement in the territory comprised by them. Different units for the necessary taxation, and therefore different units as the beneficiaries of the taxation, from those theretofore existing, were thus authorized. It was plainly designed that the extent of the improvement should not be limited alone to the necessities of a county, nor was it to be longer dependent alone upon the powers of a county. The purpose of the amendment was a broad one, its scope was large, its spirit liberal."

This same amendment was discussed in Collingsworth County v. Allred, 120 Tex. 473, 40 S.W.2d 13, 16, the Court saying:

"In our opinion, the evident purpose of the amendment to section 52 of article 3 was to enlarge the power of the Legislature rather than to restrict it. Under the provisions of section 52 as adopted in 1876, the Legislature was expressly prohibited from authorizing any political subdivision or defined district of the state to issue bonds for the purposes covered by the amendment. At that time there was no other provision in the Constitution which authorized the Legislature to grant such power. In order that the power then possessed by counties might be broadened and political subdivisions of the state and defined districts might be clothed with powers not then possessed, it was essential

that section 52 should be amended in the form in which it was adopted. That the purpose of such amendment was to confer broader and more liberal powers upon the Legislature in regard to authorizing the agencies named to issue bonds for the purposes specified, leaving unimpaired the vitality of other provisions of the Constitution, is declared by our Supreme Court in the case of Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. [216] 219, 191 S.W. 553, 555.'"

Appellants take the second and third sentences in the above quotation as a Supreme Court decision that prior to such amendment counties had no constitutional authority to issue bonds for *paved* county roads under art. 11, Sec. 2 because paved roads are named in the amendment and the court stated that prior to such amendment the Legislature had no authority to authorize the issuance of bonds for any purpose contained in the amendment.

Bearing in mind that the 1904 (1903) amendment also provided for "graveled" roads the effect of appellants' argument would be that the court in Collingsworth held that art. 11, Sec. 2 was no authority for the Legislature to authorize a county to issue bonds for county roads if such roads were to be graveled.

We think it clear when the entire opinion in Collingsworth is read that it is not fairly subject to the interpretation made by appellants. We call particular attention to the following language of that opinion:

"For more than a quarter of a century after the adoption of the amendatory portion of section 52 the Legislature, various state officers, including Governors, Attorneys General, and the officers of counties throughout the state have uniformly construed said amendment as not having the effect to take away any of the powers granted the Legislature by other provisions of the Constitution to provide for the issuance of bonds by counties for the

purpose of building courthouses, jails, and the construction of public roads."

■ We need not dwell upon the meaning of the term "county roads" as used in art. 11, Sec. 2. It is a term of common understanding. It means a public way for normal means of travel within a county under county supervision and control. It is quite true that paved roads were not common to this section of the country in 1876. Surely, however, they were not unheard of or unknown. Most Texans, we believe, had then heard of the paved highway of Ancient Rome known as the Appian Way as well as of the cobbled streets of Europe and of this country.

Upon well settled principles of constitutional construction we give the words "county roads" a broad liberal construction, not a narrow restricted one as appellants would have us do. We hold that "county roads" may include "paved roads." See Aransas County v. Coleman-Fulton Pasture Co., supra.

■ Our conclusion is that the particular provisions of art. 7048a, supra, directly involved in this case are constitutional.

The judgment of the trial court is affirmed.

Affirmed.