SAN ANTONIO RIVER AUTHORITY v. JOHN BEN SHEPPERD, ATTORNEY GENERAL.

No. A-5940. Decided February 13, 1957.
Rehearing Overruled March 27, 1957.
(299 S.W. 2d Series 920)

74

*Harvey L. Hardy,* of San Antonio, and *McCall, Parkhurst* and *Crowe* and *Clarence E. Crowe,* all of Dallas, for relator.

*John Ben Shepperd,* Attorney General, *Elbert M. Morrow* and *Frank Pinedo,* Assistants Attorney General and (on rehearing) *Will Wilson,* Attorney General, *Elbert M. Morrow* and *Howard W. Mays,* Assistants Attorney General, for respondent.

MR. JUSTICE MCCALL delivered the opinion of the Court.

This is an original proceeding for mandamus instituted in the Supreme Court by the San Antonio River Authority, hereinafter called the "District," against John Ben Shepperd, Attorney General of Texas, to compel him to approve an issue of $1,000,-000 of San Antonio River Authority Revenue Bonds, Series 1956.

Because of extensive damage done by floods of the San Antonio River in Bexar County, the Legislature in 1939 created "a Conservation and Reclamation District to be known as 'San Antonio River Authority' * * * and consisting of that part of the State of Texas which is included in the boundaries of Bexar County, and also including the natural bed and banks of the San Antonio River from its source to its junction with the Guadalupe River." Art. 8280-119, V.A.C.S. The District is declared by the Authority Act to be "a governmental agency, a municipality, body politic and corporate" vested with the power to control the waters of the San Antonio River and its tributaries. The District is given the powers and functions of a conservation and reclamation district as specified in Section 59, Article 16 of the Texas Constitution. Among the powers specifically listed is the power to acquire or construct flood control facilities and to borrow money for its purposes, including the issuance of bonds in an amount not exceeding $25,000,000, to be secured by "a pledge of the revenues, income and funds of the

District without reference to the source." Before any bonds may be issued they must first be authorized by an election in the District and then approved by the Attorney General of Texas. The District is expressly denied any power to levy or collect taxes or assessments.

In 1948 Section 1-a of Article 8 was added to the Texas Constitution, containing the following provision:

"From and after January 1, 1951, the several counties of the State are authorized to levy ad valorem taxes upon all property within their respective boundaries for county purposes * * * not to exceed thirty cents (30c) on each One Hundred Dollars ($100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of this State, provided the revenue derived therefrom shall be used for construction and maintenance of Farm to Market Roads or for Flood Control * * *."

In 1949 the Legislature passed an enabling act under the above amendment to the Constitution, Article 7048a, V.A.C.S. This Act prescribes a complete statutory system for carrying the amendment into effect. Section 7 of said Act provides that before the tax authorized by the constitutional amendment can be levied, assessed, and collected in any county the tax must be "submitted to a vote of the qualified property tax paying voters of such county." The voters must approve the maximum rate of the tax, within the thirty cent constitutional limit, and the portion of the tax to be used for farm-to-market roads or flood control purposes. Section 7 concludes with the following provision:

"Provided, further, that elections may subsequently be called and held in the same manner for the purpose of changing the amount of the maximum tax within the limit of thirty cents (30c) on the One Hundred Dollars ($100) valuation, or for changing the amounts of the maximum specific tax voted for each purpose; provided, however, that such tax or taxes may not be reduced to an extent which would result in the impairment of any bonds or warrants theretofore issued under the provisions of Section 10 of this Act."

Section 10 of the Act provides that if a majority of the qualified property tax paying voters approve the tax, the Commissioners Court may issue negotiable county bonds or county time warrants for the construction of roads or flood control facilities, provided such bonds or warrants must be approved by a majority of the qualified property tax paying voters in a separate election.

On April 1, 1951, an election was held in Bexar County in compliance with Section 7 of Article 7048a and the voters authorized the Commissioners Court to levy, assess, and collect an additional ad valorem tax of fifteen cents for flood control purposes and fifteen cents for farm-to-market roads.

On April 25, 1951, the Legislature authorized the Commissioners Court of any county to "enter into contracts for the accomplishment of plans and programs for flood control and soil conservation" with various other federal and state governmental agencies, specifically including state conservation and reclamation districts, such as the San Antonio River Authority. Art. 7048b, V.A.C.S. This Act further provided that "the responsibility for carrying out such plans and the expenditure of funds of the county and such agencies * * * may by such agreement be divided between the parties or delegated to either the county or to one or more of said agencies * * * and such contracts may be for a specified term of years or until certain plans or programs have been accomplished." All such contracts theretofore made were validated.

On June 6, 1955, the following amendment was added to Article 7048b:

"* * * provided further that in the event any such agency, district or municipal corporation shall issue its bonds payable from and secured by revenues to be derived from any such contract it may be provided therein that such contract will continue in effect until such bonds, or any refunding bonds issued in lieu thereof, have been fully paid."

On September 12, 1955, the San Antonio River Authority entered into a contract with the Commissioners Court of Bexar County, whereby the District agreed to carry out a program of flood control by widening, deepening, straightening, and otherwise improving the San Antonio River and its tributaries in Bexar County, including the construction, extension, repair, maintenance, and operation of various retaining walls, bridges, abuttments, and dams, according to plans approved by the United States Corps of Engineers or the Engineers for the District. Voluminous blue prints of the various projects along the course of the river were attached to the contract and made a part thereof.

In consideration for the agreement of the District to carry out the projects as set forth in the blue prints the Commissioners

Court of Bexar County agreed that all of the proceeds of the fifteen cent flood control tax would be paid over to the District for the term of the contract, or until the project was completed and fully paid for, or until the contract limit had been paid, whichever should first occur. The contract limited the cost to Bexar County to $12,000,000 plus interest paid on any moneys borrowed by the District through issuance of its bonds or otherwise in order to finance said project. The term of the contract was specified as thirty years from the date of execution, but it was provided that if the District issued bonds payable from the revenues to be derived from this contract, the contract should continue in effect until the bonds have been paid. The County agreed to assess, levy, and collect the fifteen cent flood control tax each year throughout the term of the contract.

The contract also provided for detailed annual reports by the District to the County, and the District was authorized to coordinate the expenditure of its funds with all other federal and state agencies and municipalities.

The plans set forth in the above-mentioned blue prints were designed by the United States Corps of Engineers. It was estimated that the total cost of the projects would be $24,225,000 of which amount $14,700,000 would be paid by the federal government acting through the Corps of Engineers. The cost to the District was estimated to be $10,000,000. The only income of the District is that to be derived from the above contract with Bexar County.

The voters of the District have approved the issuance of $10,000,000 in bonds to pay for the project, and the District has authorized the issuance of the first $1,000,000 of such bonds. In accordance with Art. 8280-119, V.A.C.S. which created the District, this $1,000,000 issue of bonds was submitted to the Attorney General of Texas for his approval, but he declined to approve the bonds, specifying three objections thereto which will be hereafter discussed.

■ The first objection of the Attorney General to the proposed bond issue was that the Commissioners Court of Bexar County had no legal authority to enter into the above contract with the District to assess, levy, and collect the fifteen cent flood control tax for a term of thirty years because such contract attempted to deprive the voters of Bexar County of the right reserved to them in Section 7 of Article 7048a to change the amount of such

tax by subsequent elections. The only limitation on this power of the voters to change the amount of the tax is as follows:

" . . . provided, however, that such tax or taxes may not be reduced to an extent which would result in the impairment of any bonds or warrants theretofore issued under the provisions of Section 10 of this Act."

The $1,000,000 of bonds in this case were not approved by the voters of Bexar County under Section 10 of Article 7048a, but by the voters of the District under Section 16-A of Article 8280-119. Hence the Attorney General contends that when the voters of Bexar County approved the levy of the fifteen cent flood control tax they did so with the reservation that they could subsequently in the same manner vote to change the rate unless under Article 7048a they voted to approve an issue of negotiable bonds or time warrants by Bexar County. It is argued that this reserved right was an integral part of the proposition adopted by the Bexar County voters in the election on April 1, 1951 and the Commissioners Court cannot by this contract with the District deprive the voters of Bexar County of this reserved right. The laws in force and effect on the election date become a part of the voted proposition and thereby a part of the contract between Bexar County and the voters, and the county cannot by its unilateral action vary the terms of the contract. To support the above contention the Attorney General cites San Saba County v. McCraw, 130 Texas 54, 108 S.W. 2d 200; Cochran County v. Mann, 141 Texas 398, 172 S.W. 2d 689; Wilkerson v. Otto, 289 S.W. 2d 411 (Texas Civ. App., 1956); Norton v. Tom Green County, 182 S.W. 849 (1951), cert. den. 325 U.S. 861; and David v. Timon, 183 S.W. 88 (Texas Civ. App., 1916). While such cases support this general proposition of law, they are not decisive in the present case. The most pertinent of the above cited cases is the decision of this Court in San Saba County v. McCraw, 130 Texas 54, 108 S.W. 2d 200. In that case the Constitution required that before an additional fifteen cent road tax could be levied and collected by the county, the tax should be approved by a majority of the property tax paying voters in the county. Under the statute which implemented the constitutional provision it was provided that, "No bonds shall ever be issued under the provisions of this chapter." It was also provided that the taxpayers could repeal the tax after two years. In 1924 an election was held approving the road tax in San Saba County. The commissioners court issued a large amount of scrip warrants against its Road and Bridge Fund. Thereafter in 1937 the Legislature enacted a statute authorizing the Commissioners

Court of San Saba County to issue 40 year bonds on its own motion to replace the warrants. It was provided in the new statute that these bonds would constitute a charge against the fifteen cent road tax voted in 1924. The Court held that the new statute attempted to impair the obligation of the contract between the county and the voters and was therefore unconstitutional.

It will be noted that in the San Saba County case, unlike the instant case, the Constitution required approval of the tax by the voters of the county. Pursuant to the constitutional mandate the Legislature provided for submission of the proposition to the voters of a tax against which no bonds could be issued, and which tax could be repealed after two years. After approval of the tax under such conditions the legislature obviously could not repudiate the contractual prohibition against the issuance of bonds against the tax, and thereby incidentally deprive the voters of the right to repeal the tax for forty years until such bonds were paid off.

It is true that in the instant case the statute reserved the right to the voters to repeal the fifteen cent flood control tax. There was no two year time limit. Under Section 7 of Article 7048a the voters could have repealed the tax within the same year it was approved and before a penny of taxes had been collected. Such action would have impaired any obligation of any nature incurred in anticipation of the tax by the Commissioners Court. Section 10 of Article 7048a specifically provides that the Commissioners Court may issue either negotiable county bonds or county time warrants for flood control purposes, with the approval of the voters. Section 7 provides that the tax cannot be reduced to the extent that it would impair such bonds or warrants.

Did the county at the time of the election in 1951 have the authority under Article 7048a to incur any future obligation against the tax other than by negotiable warrants or bonds? Section 10 does not purport to provide the exclusive form of future obligation. It provides the Commissioners Court *"may issue either negotiable county bonds or county time warrants."* Such provision must be construed as an additional power and not the exclusive method of creating an obligation. Lasater v. Lopez, 110 Texas 179, 217 S.W. 373. As this court stated in that case "In the absence of express declaration the Legislature is not to be credited with the purpose of forcing a bond issue upon the people every time it is necessary for the county to create an interest bearing debt of deferred maturity, however small, for

road improvement. Section 1-a of Article 8 authorized the counties to collect this tax to be used for flood control purposes. Section 5 of Article 7048a authorized the Commissioners Court to spend the revenue from this tax for flood control purposes within the county, and authorized the use of all or part of such funds in connection with "plans and programs" of various federal and state agencies, including a state Conservation and Reclamation District, such as the San Antonio River Auathority.

■ From the powers thus expressly given to engage in flood control programs and to expend money therefor, the law implies the power to use the general credit of the county to accomplish the desired end. In refusing to enjoin the issuance of time warrants by El Paso County to improve a livestock and agricultural exposition building the El Paso Court of Civil Appeals in Adams v. McGill, 146 S.W. 2d 332, (error refused) quoted with approval from 19 R.C.L., Sec. 84, p. 780:

"A distinction is drawn between borrowing money and obtaining property or labor on credit, it being everywhere held that a municipal corporation has an implied power to use its credit for the accomplishment of any object for which it is authorized by law to expend money." p. 335.

The court in Adams v. McGill relied upon the decisions of this court in Lasater v. Lopez, 110 Texas 179, 217 S.W. 373, and Clark v. W. L. Pearson & Co., 121 Texas 34, 39 S.W. 2d 27. The following statement was quoted from the Clark case:

"The rule is well established that municipal corporations are invested at least with an implied or incidental power to contract on the general credit of the city with respect to such improvements as they are authorized by law to make."

Also cited and relied upon by the court in Adams v. McGill was the case of Bridgers v. City of Lampasas, 249 S.W. 1083, wherein the reason for the distinction between the rule as to borrowing money and the rule as to obtaining services or improvements on credit is discussed. Borrowed money can be diverted from its legitimate purpose and the voter deprived of any benefit therefrom, but there is no such danger when authorized services or improvements are obtained by the public on credit.

■ Thus the Commissioners Court of Bexar County under the above constitutional and statutory provisions and under the de-

cisions of the Texas courts had the power to contract on the general credit of the county to further a flood control program. Such contract and program might legally take a number of years for execution and might legally involve the general credit of the county for such period. Such was done in this case and such action was authorized by the law of this state at the time of the election approving the fifteen cent tax on April 1, 1951. These propositions of law were also a part of the contract between the county and the voters. The provision of the contract that the voters could repeal or reduce the tax at any time must be construed in harmony with the above propositions. When this is done the right of the voters to repeal the tax is limited by the express and implied authority given the Commissioners Court to contract on the credit of the county and thus incur contractual obligations which cannot be constitutionally impaired by a subsequent reduction or repeal of the tax.

The District contends that Section 1-a of Article 8 authorizing the flood control tax here involved is self-executing in empowering the Commissioners Court to levy this tax, and that Section 7 of Article 7048 providing that the tax shall not be levied until approved in an election and providing for repeal thereof by an election is an unconstitutional restriction by the Legislature upon a power granted by the people in the constitutional amendment. In view of our above holding it is not necessary to pass upon this question. But it is noted that, as argued by the Attorney General, such statutory implementation can only be upheld on the theory that such legislative acts are necessary to provide the method and procedure for levying, collecting, and using the tax. Stratton v. Commissioners Court of Kinney County, 137 S.W. 1170 (error refused) ; Stevenson v. Blake, 131 Texas 103, 113 S.W. 2d 525; Mitchell County v. City National Bank, 91 Texas 361, 43 S.W. 880; Tilley v. Overton, 116 Pac. 945 (Okla. Sup. Ct.). To construe the provision concerning repeal or reduction of the tax in Section 7 of Article 7048a as nullifying any contract which created future obligations on the part of the county would seem to go beyond mere procedure and method and to seriously impair the authority given in the constitutional amendment.

The District also contends that since the Constitution required no election, all provisions concerning elections to adopt, reduce, or repeal the tax are legislative requirements only. Thus the Legislature in its discretion could provide for the levy, collection, and use of the tax by the action of the Commissioners Court without any election whatever. Having such power the

Legislature could remove all or any part of the restrictions it had put upon the levy, collection, or use of the tax. It is contended that the Legislature did so by enactment of Article 7048b, which specifically approved the power of the Commissioners Court to make the type of contract made in this case between Bexar County and the District. Since under our view the pertinent provisions of Article 7048b pertaining to the power to contract were declaratory of the existing law as contained in the Section 1-a of Article 8 of the Constitution, Article 7048a, and the decisions of the courts of this state, it is unnecessary to pass upon this contention.

■ The second objection of the Attorney General to the $1,000,-000 bond issue in this case was that the fifteen cent tax was to be collected by Bexar County and held in trust for flood control purposes and the County had no right to assign or delegate its duties under this trust to the San Antonio River Authority. It is contended that by the contract between the County and the District the Couny is attempting to delegate its legislative powers. The Attorney General argues that Section 5 of Article 7048a provides that the tax funds "shall be under the jurisdiction and control of the Commissioners Court," and by the contract in this case the Commissioners Court of Bexar County is placing the funds under the jurisdiction and control of the District.

It is obvious that if the tax funds are to be expended for flood control purposes that at some point the Commissioners Court must part with jurisdiction and control over the funds by delivering them to those who have agreed to do the actual work. The Commissioners are not required to do the work themselves, but are authorized to contract for it to be done. On a similar question in Roper v. Hall, 280 S.W. 289, the Waco Court of Civil Appeals stated:

"The general powers so given to the commissioners' courts are of little practical value without the further authority to use adequate means to insure the proper, intelligent and effective exercise thereof * * *. The purpose of the contract under consideration was to aid in securing such results. The services contracted to be rendered called for information and experience not possessed by the ordinary person * * *. The making of the contract under consideration was within the implied power possessed by the Commissioners' Court of Freestone County * * *." p. 291.

Section 5 of Article 7048a authorizes the Commissioners Court to use "all or part of such funds" in connection with "plans and programs of * * * Conservation and Reclamation Districts." It also provides that such plans for improvement be approved by the county. Here detailed plans for flood control facilities have been approved by the county, which has contracted with the District to execute such plans. The county has not violated its trust. It has collected the flood control tax and used its supervision and control over the same by purchasing therewith the execution of an extensive flood control project as set forth in the blue prints. The contract here is essentially a construction contract for public improvements with the District as general contractor instead of the customary private contractor. There is no delegation of legislative authority or trust duties by the Commissioners Court.

■ The third objection of the Attorney General to this bond issue is that this contract undertakes to deliver the proceeds of the flood control tax to the District in violation of Section 17 of Article 1 of the Texas Constitution, prohibiting any "irrevocable and uncontrollable grant of special privilege" and Section 52 of Article 3 of the Constitution, condemning the attempt of a county "to lend its credit or grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever."

It is contended that by this contract the county has made an "irrevocable and uncontrollable grant of the use of public moneys and of the governmental powers and functions correlative with the use of these funds" to the District for a period of thirty years or more. In our view the payment of the tax money to the District to execute specific plans for flood control facilities approved by the Commissioners Court and incorporated into the contract does not constitute the granting of a privilege in violation of the constitution either as to use of tax money or as to legislative authority. It is undoubtedly the law that a county cannot contract away its police power, but this rule does not prevent a county from exercising its lawful function to contract for public works. The decisions in City of San Antonio v. San Antonio Irrigation Co., 118 Texas 154, 12 S.W. 2d 546; City of Crosbyton v. Texas New Mexico Utilities Co., 157 S.W. 2d 418 (error refused, w.o.m.) ; and Gulf Bithulithic Company v. Nueces County, 11 S.W. 2d 305 (Com. App.) cited by the Attorney General on the above point support the validity of the contract in this case. In the City of San Antonio case the Commission of Appeals upheld a ninety-nine year contract for the

construction and maintenance of a ditch for the drainage of the city's outfall sewer line. The court rejected the same contention being here made that there was an unlawful delegation or grant of governmental power and privilege.

In the case of Harris County Flood Control District v. Mann, 135 Texas 239, 140 S.W. 2d 1098, this Court held unconstitutional a statute which allowed the Commissioners Court of Harris County to supplement the funds of the Harris County Flood Control District to help it pay the bonds issued by the District. The District had issued the bonds to be paid from state taxes donated to the District. The statute provided:

"Should the necessity arise, the Commissioners' Court may supplement from its general funds any State taxes hereafter donated and granted, but no tax shall ever be levied or any debt be created against the County for such purpose without a vote of the people." p. 1103.

A later statute had a similar provision. The court held that the above statutes attempted to authorize Harris County to grant public money in violation of Section 52 of Article 3 of the Texas Constitution.

Harris County of course hoped to benefit from the flood control program of the Harris County Flood Control District. The Legislature authorized Harris County to give the District county tax money. There was no obligation on the part of the District to construct or maintain any flood control facilities. There was no obligation on the part of Harris County to pay the District any money either. The statutes authorized a *grant* of public money by the County in violation of the Constitution.

In the instant case the San Antonio River Authority has contracted to construct according to agreed plans specific flood control facilities and Bexar County has agreed to pay therefor. No loan of credit or grant of public money is involved. Both parties are obligated in a quid pro quo contract. Articles 7048a and 7048b authorize the Commissioners Court of Bexar County to *contract* with the District, and not to *grant* money to the District. Such contract does not constitute an unconstitutional pledge of credit or grant of public money by Bexar County.

Under the above construction of the statutes and record as here presented, the Attorney General should have approved the

bonds. The writ of mandamus will issue as prayed for by the San Antonio River Authority.

Opinion delivered February 13, 1957.

The foregoing opinion was prepared by Associate Justice McCall while he was a member of the Court. His membership has now terminated, but the Court adopts the opinion as its own.

ON MOTION FOR REHEARING

MR. JUSTICE SMITH, dissenting.

The Attorney General of Texas refused to approve the bonds and proceedings pertaining thereto for the following sound, and, in my opinion, unanswerable reasons. In this connection, the present Attorney General of Texas has filed a logical and convincing motion for rehearing in which he takes the same position as the former Attorney General. I am stating here and adopting as my own the reasons assigned by the Attorney General for disapproval of the bonds and bond record.

"1.  On April 17, 1951, an election was held within Bexar County and a majority of the resident qualified property taxpaying voters who had duly rendered their property for taxation authorized the county to levy the additional ad valorem tax under the provisions of Article 8, Section 1(a) of the Constitution of Texas. The laws in force and effect on that date became a part of the voted proposition and thereby a part of the contract between the county and the voters who were qualified to vote at the election. The county may not, by its unilateral action, vary the terms of that contract. San Saba County v. McCraw, 130 Texas 54, 108 S.W. 2d 200; Wilkerson v. Otto, et al., 289 S.W. 2d 411 (Texas Civ. App. 1956), writ dism.; David v. Timon, 183 S.W. 2d 89 (Texas Civ. App. 1916); Norton v. Tom Green County, 182 S.W. 2d 849 (1951), cert. den. 325 U.S. 861. In 1951, the law required the county to hold a bond election before the taxes could be pledged and provided a method of discontinuing the tax. These rights will be swept aside if the contemplated issue were to be approved.

"2.  Bexar County having acquired the right to collect, hold, and expend certain moneys as a trust fund for special uses may not assign or delegate its duties under the trust. *Cooley on Constitutional Limitations, 8th Edition, Volume 1, page 434.*

"3.  Bexar County, by virtue of its contract with the San Antonio River Authority, has granted and conveyed the pro-

ceeds of the county tax levy to the River Authority, who in turn pledges these taxes to the payment of its bonds. Such a grant or lending of credit is in direct contravention of the Constitution of Texas. I would call your attention to the case of Harris County Flood Control District v. Mann, 135 S.W. 2d 239, 148 S.W. 2d 1098 (1940). In that case, Harris County sought to pledge the proceeds of its tax collections to the payment of bonds to be issued by the Flood Control District, and the Supreme Court of Texas said (at page 1104) :

'It follows that, under the plain terms of Section 52 of Article III, supra, no part of the funds of Harris County may be pledged or used to pay the bonds of this District.' "

On original hearing I did not register a dissent, although I entertained serious doubt as to the correctness of the holdings made and the interpretation of the powers of a Commissioners' Court. Upon further consideration, it is my considered opinion that our former opinion violated every principle of public policy which demands that definite limitations be placed on the power of the county, a political subdivision of our government, to spend public money.

It is important that we particularly consider the provisions of Sections 5, 7, and 10 of Article 7048a, Vernon's Annotated Civil Statutes, and Article 11, Section 7, of the Constitution of Texas. The latter reads, in part, as follows:

"* * * But no debt for any purpose shall ever be incurred in any manner by any * * * county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund; * * *."

The original opinion has placed a construction upon the provisions of Section 5 of Article 7048a, supra, that forces it to contravene the provisions of Article 11, Section 7,[1] of the

---

[1]"Art. 11, Section 7. All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized upon a vote of a two-thirds majority of the resident property taxpayers voting thereon at an election called for such purpose to levy and collect such tax for construction of seawalls, breakwaters, or sanitary purposes, as may now or may hereafter be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for. As amended Nov. 8, 1932."

Texas Constitution, supra. In order to get the full import of Section 5, I set it out in footnote below.[1a]

In substance, Section 5 of Article 7048a only requires that the funds "shall be used" for flood control purposes and permits those moneys *"be used in connection with the plans and programs of * * * Flood Control Districts * * * and such funds may be expensed* by the Commissioners' Court in accordance with this Act for flood control purposes." (Emphasis added).

Section 5, of Article 7048a, supra, permits the use of current funds for specified purposes. The qualified voters of Bexar County have the valuable right under the clear and unequivocal language contained in Section 7[2] of Article 7048a to vote upon a

---

[1a]"Sec. 5. The funds transferred to the Flood Control Funds shall be under the jurisdiction and control of the Commissioners Court of such county and shall be used solely for Flood Control purposes. All or part of said funds may be used in connection with the plans and programs of the Federal Soil Conservation Service and the State Soil Conservation Districts and the State Extension Service, Conservation and Reclamation District, Drainage Districts, Water Control and Improvement District, Navigation Districts, Flood Control Districts, Levee Improvement Districts and Municipal Corporations, and such funds may be expended by the Commissioners Court in accordance with this Act for flood control purposes, including all soil conservation practices such as contouring, terracing, tank building, and all ther practices actually controlling and conserving moisture and water, within any said county and political subdivision thereof for Flood Control and Soil Conservation programs, provided that such plans for improvement are approved by such county and political subdivision.

---

[2]"Sec. 7. Before any county shall levy, assess and collect the tax provided for herein the question shall by the Commissioners Court of the county be submitted to a vote of the qualified property taxpaying voters of such county at an election called for that purpose, either on said Commissioners Court's own motion, or upon petition of ten per cent (10%) of the qualified property taxpaying voters of said county as shown by the returns of the last general election. Said election shall be ordered at a regular session of said Commissioners Court and such order shall specify the rate of tax to be voted on, not to exceed thirty cents (30c) on each One Hundred Dollars ($100) valuation of taxable property within such county, shall state the date when said election shall be held, and shall appoint officers to hold said election in accordance with the election laws of this State. Provided, however, that the proposition submitted to the qualified property taxpaying voters at said election may provide that the tax at a rate not to exceed thirty cents (30c) on each One Hundred Dollars ($100) valuation may be used for the construction and maintenance of Farm-to-Market and Lateral Roads or for Flood Control purposes, either or both, as the Commissioners Court may determine (in which event the ballots shall have written or printed thereon, 'For the tax of not exceeding _____cents on each One Hundred Dollars ($100) valuation,' and the contrary thereof, specifying the tax to be voted upon), or the proposition may provide for a specific maximum tax for Farm-to-Market and Lateral Roads purposes and a specific maximum tax for Flood Control purposes, the total of the two (2) specific maximum taxes not to exceed thirty cents (30c) on the One Hundred Dollars ($100) valuation (in which event the ballots shall have written or printed thereon, 'For a Farm-to-Market and Lateral Roads tax of not exceeding _____ cents and a

change in the tax rate, and this reserved right can only be relinquished by the people themselves in the manner provided in Section 10[3] of said Article 7048a, Vernon's Annotated Civil Statutes. Our original opinion expressly fails to pass upon the contention of the District that Section 1-a of Article 8 of the Constitution of Texas, is self-executing in impowering the Commissioners' Court to levy this tax, and that, therefore, Section 7 of Article 7048a, supra, providing that the tax shall not be levied until approved in an election and providing for repeal thereof by an election is an unconstitutional restriction by the Legislature upon a power granted by the people in the Constitutional Amendment. The weakness of our original opinion on the question is the fact that it does pass upon one phase of this question by holding, in effect, that Section 1-a of Article 8, supra, is self-executing. The opinion finds it was not necessary to pass upon the question raised by the District that Section 7 of Article 7048a is unconstitutional. It is my contention that Article 7048a, supra, and particularly the several sections thereof under discussion is constitutional. This being true, and in view of the fact that Section 1-a[4] of Article 8, supra, is not self-executing, and

---

[3]"Sec. 10. After an election has been held under the provisions of Sections 7 and 8 of this Act, at which election a majority of the qualified, property tax-paying voters, voting at said election, voted in favor of the tax, the Commissioners Court may issue either negotiable county bonds or county time warrants for the purpose of the construction and/or improvement of Farm-to-Market and Lateral Roads, or for the purpose of constructing permanent improvements for Flood Control purposes: provided, however, that any such bonds or warrants must have been authorized by a majority of the qualified property taxpaying voters who have duly rendered the same for taxation voting at an election duly called by the Commissioners Court, such bonds and warrants to be issued and the taxes to be levied and collected in payment thereof in accordance with the provisions of Chapter 1, Title 22, Revised Civil Statutes of Texas, and provided further that each proposition shall be separately submitted to the voters at such election."

---

[4]"Sec. 1-a. From and after January 1, 1951, no State ad valorem tax shall be levied upon any property within this State for general revenue purposes. From and after January 1, 1951, the several counties of the State are authorized to levy

---

Flood Control tax of not exceeding _____ cents, on the One Hundred Dollars ($100) valuation,' and the contrary thereof, specifying the specific taxes to be voted upon). Provided, further, that elections may subsequently be called and held in the same manner for the purpose of changing the amount of the maximum tax within the limit of thirty cents (30c) on the One Hundred Dollars ($100) valuation, or for changing the amounts of the maximum specific tax voted for each purpose; provided, however, that such tax or taxes may not be reduced to an extent which would result in the impairment of any bonds or warrants theretofore issued under the provisions of Section 10 of this Act."

since the Legislature has determined by the enactment of Article 7048a that the authority for counties to levy taxes under Article 8, Section 1-a, supra, shall be by the vote of the people, I cannot reach any other conclusion than that the contract involved, in effect, contemplates the levy of taxes through the Commissioners' Court and not through the vote of the governed, as expressly provided under the provisions of Section 7 of Article 7048a, supra. The adoption of Article 7048a is an express determination by the Legislature of the method for authorizing counties to levy taxes under Article 8, Section 1-a, of the Constitution of Texas. Such determination is conclusive and constitutional. The Constitution does not prohibit such method. I agree with respondent in his statement that "Had it been intended that the Commissioners' Court, the normal governing body of the County, should have the power to levy the tax without the consent of the local people, surely the Constitution would have so provided."

It is my opinion that the execution of the contract was without legal authority. The law in force and effect at the time of the holding of the election on April 17, 1951, became an integral part of the voted proposition and thus forms a part of the contract between the participants at the election and Bexar County. The Relator seems to recognize this concept but seeks to deny its applicability to our own case upon the theory that the Commissioners' Court — at the time of the election — had general authority to enter into the contract with the Relator and pledge the revenues from its tax collection. It presents an alternate ground that Sections 7, 8, 9, and 10 of Article 7048a, supra, are unconstitutional. Some of these sections have heretofore been held constitutional by the courts. See Burke v. Thomas, Texas Civ. App. 285 S.W. 2d 315, er. ref. n.r.e. This is the first time

---

ad valorem taxes upon all property within their respective boundaries for county purposes, except the first Three Thousand Dollars ($3,000) value of residential homesteads, not to exceed thirty cents (30c) on each One Hundred Dollars $100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of this State, provided the revenue derived therefrom shall be used for construction and maintenance of Farm-to-Market Roads or for Flood Control, except as herein otherwise provided.

"Provided that in those counties or political subdivisions or areas of the State from which donations have heretofore been granted, the State Automatic Tax Board shall continue to levy the full amount of the State ad valorem tax for the duration of such donation, or until all legal obligations heretofore authorized by the law granting such donation or donations shall have been fully discharged, whichever shall first occur; provided that if such donation to any such county or political subdivision is for less than the full amount of State ad valorem taxes so levied, the portion of such taxes remaining over and above such donation shall be retained by said county or subdivision. Added Nov. 8, 1932, as amended Aug. 26, 1933; Nov. 2, 1948."

the constitutionality of Section 7 has been questioned. The constitutionality of this section should be not only upheld, but its provisions should not be ignored. Article 7048a carefully provides the manner for the issuance of obligations payable from *future* revenues in Section 10.

Our original opinion holds that Section 5 of Article 7048a grants authority to the Commissioners' Court to enter into a contract with the Relator for the performance of work in accordance with certain specifications, and that the provisions of Section 7, Article 7048, which reads:

"* * * * Provided, further, that elections may subsequently be called and held in the same manner for the purpose of changing the amount of the maximum tax within the limit of thirty cents (30c) on the One Hundred Dollars ($100) valuation, or for changing the amounts of the maximum specific tax voted for each purpose; provided, however, that such tax or taxes may not be reduced to an extent which would result in the impairment of any bonds or warrants theretofore issued under the provisions of Section 10 of this Act."

This holding is contrary to the holdings in past decisions, and not only places a different interpretation upon the constitutional powers of a Commissioners' Court, but permits the Commissioners' Court by contract to pledge the future revenues of the county and lend its credit for the benefit of and in aid of the Relator. The contract is in violation of Article 3, Section 52, of the Constitution of Texas. Not only that, the contract by its very terms constitutes a complete abdication of constitutional legislative powers by the Commissioners' Court, and completely ignores the provisions of Sections 3 and 5 of Article 7048a which requires the flood control tax shall be set apart in a separate fund to be used only for flood control purposes and that such funds *"shall be under the jurisdiction and control of the Commissioners' Court."* (Emphasis added). Section II of the contract, if upheld, is in violation of this requirement of the statute, and is an "irrevocable and uncontrollable grant" of the use of public moneys. The contract goes even further and grants unto the Relator full governmental powers and functions incident to the use and control of such funds for a period that may exceed thirty years. To allow this contract to stand is to permit the Commissioners Court to act in violation of Article 1, Section 17, of our Constitution, and will render the Commissioners Court unable to perform its public duties. I grant there is strong support for the argument that our Constitution should be rewritten, but I

take the position that this Court does not have the power to change the Constitution. This power rests with the people. The Legislature has adopted the method of procedure, and its Act takes into account the voters of Bexar County. The Constitution of Texas and the several Acts of the Legislature have set up definite road blocks in the path of the course sought to be taken under the terms of the contract before us. Under the provisions of Article 8280-119, Vernon's Annotated Civil Statutes, the Relator is required to pursue a program of flood control work. This does not mean that the county can violate the Constitution, and the applicable statutes to better enable the Relator to perform its statutory duties. See Harris County Flood Control District v. Mann, 135 Texas 239, 140 S.W. 2d 1098. Here we have a contract between two political subdivisions wherein the county agrees to pay over to Relator all of the proceeds of the fifteen cent (15c) flood control tax levy for a period of thirty years, or until the amount of $12,000,000.00, plus interest paid on any moneys borrowed, has been paid. The Relator on the other hand only agrees to do what is already bound by law to do. Therefore, I ask—what consideration is there for the contract so far as the county is concerned? The county cannot and does not have the right to pledge either its current or future revenues without express statutory authority. See Citizens State Bank v. Terrell, 78 Texas 450, 14 S.W. 1003. The power to levy the tax and to vote upon a change in the tax rate has been granted to the people, and the Commissioners Court is without power to contract away those rights. See San Saba County v. McCraw, 130 Texas 54, 108 S.W. 2d 200.

Our original opinion attempts to draw a distinction between the San Saba County case, supra, and ours by stating that in that case the Constitution required approval of the tax by the voters of the county. I submit that such holding is erroneous. As heretofore stated, Article 8, Section 1-a does not expressly grant to the Commissioners Court the power to levy taxes without the consent of the local people; therefore, it is my contention that there are two methods for authorizing counties to levy taxes under Article 8, Section 1-a, as follows: (1) through the Commissioners Court, (2) through the vote of the governed. The Legislature has chosen the latter method, and since the Constitution permits and does not prohibit the levy of the tax by those qualified to vote under the provisions of Article 6, Section 3-a of the Constitution, we must hold that the method provided by the Legislature by the adoption of Article 7048a is the only applicable method.

Respondent's motion for rehearing should be granted and the writ of Mandamus prayed for by Relator should be refused.

Opinion delivered March 27, 1957.