CITY OF MCALLEN V. PRICE DANIEL, ATTORNEY GENERAL.

No. A-1593. Decided May 12, 1948.
Rehearing overruled June 30, 1948.
(211 S. W., 2d Series, 944.)

*McCall, Parkhurst & Crowe* and *Millard Parkhurst,* all of Dallas, for relator.

*Price Daniel,* Attorney General, *Ocie Speer, Harry M. Stanfield* and *George W. Sparks,* Assistants Attorney General, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The City of McAllen, Texas, seeeks by this original mandamus proceeding to require the Attorney General of Texas to approve certain bonds of the city, called McAllen Waterworks System Revenue Bonds, Series 1948, in the principal amount of $925,000.00. As hereafter more fully explained, the City seeks alternatively to require that such approval be given on August 1, 1948.

In the underlying ordinance, $350,000.00 of the proposed bond proceeds are assigned to improvement and extension of the waterworks system and the remaining $575,000.00 to retirement of an equal face amount of presently outstanding bonds, called McAllen Water Revenue Bonds, which the city issued under date of February 1, 1945, and which are held by the public and mature serially on February 1st of each year. The contemplated operation will result in refunding all of these 1945 bonds, since the total outstanding is only $585,000.00, and the city has already deposited in the bank of payment sufficient funds to discharge the amount of $10,000.00 which mature on February 1, 1948. As suggested by their titles, both issues are payable only from net revenues of the city waterworks system and are secured or to be secured thereby.

The authority for the proposed 1948 bonds is found in Articles 1111-1118, R. C. S., 1925. No question is raised as to the propriety of the purposes for which the 1948 bonds are intended, the regularity of the proceedings authorizing them, the legality of the 1945 bonds or the fact that the latter are subject to prepayment upon call. The only dispute is as to whether, in view of the method set up by the underlying ordinance for handling the sale of the 1948 series and retirement of the 1945 series through the intervention of a private financial house called Ranson-Davidson Company, Inc., the Attorney Geeneral should be required to approve the 1948 series forthwith or, if not forthwith, on August 1, 1948.

As nearly as we can determinee from the brief record before us, the arrangement in question is as follows: The 1948 bonds are to be sold to Ranson-Davison Company, Inc. The

entire issue is to be first deposited with the State Comptroller. The particular bonds earmarked for improvement and extension are not to be delivered to Ranson-Davidson Company, Inc., until the city shall have called the outstanding 1945 bonds for redemption as of August 1, 1948, and deposited in the bank of payment of such bonds sufficient funds to pay the interest accrued to the mentioned call date and the amount of the call premium and until the Ranson-Davidson Company, Inc., shall have agreed unconditionally and irrevocably to pay at the bank of payment the $575,000.00 necessary to retire the 1945 bonds outstanding in this amount and thereafter to exchange these retired bonds for their equivalent in 1948 bonds. The city has, in fact, already issued the necessary call and made the required interest and premium deposit. The Ranson-Davidson Company, Inc., has not, however, made its commitment nor, of course, has the prepayment money been deposited by anyone in the bank of payment. Under the ordinance, Ranson-Davidson Company, Inc., is not required to make its commitment until after the record relating to the bond issued shall have been examined by the Attorney General, and he shall have advised the city that he will approve the bonds upon the making of said agreement and upon the making of an unconditional and irrevocable arrangement with the bank of payment for the payment of the outstanding bonds on August 1, 1948. The Attorney General has not, of course, advised the city that he will approve the bonds as above contemplated, and has evidently taken the position, as reflected in the first four points of his brief, that until all the 1945 bonds have been actually surrendered, the issuance of the 1948 bonds is prohibited by that part of Article 1113, R. C. S., 1925, which provides:

"No part of the income of any such system shall ever be used to pay any other debt, expense or obligation of such city or town, until the indebtnedness so secured shall have been finally paid."

The Attorney General particularly insists that the quoted provision prevents the issuance of any 1948 bonds prior to August 1, 1948, the date for which the 1945 bonds have been called.

The above described method of handling the 1948 issue does indeed involve the delivery to the Ranson-Davidson Company, Inc., of the improvement and extension portion of the bonds prior to the time when all the 1945 bonds shall have been surrendered by the holders and even prior to the call date of

August 1, 1948. If the plan had now been fully carried out, the Attorney General would have advised the city that he approved the 1948 issue, subject to the Ranson-Davidson Company, Inc., making its firm commitment and arrangements to pay off the 1945 bonds and to exchange the latter for the refunding portion of the 1948 bonds; the city would have (as it actually has) issued the call for redemption of the 1945 bonds and made the necessary deposits to cover the $10,000.00 February 1, 1948, interest payment and the call premium; the Ranson-Davidson Company, Inc., would, on the strength of the Attorney General's advices, have made its firm commitment and arrangements to pay off the principal of the 1945 bonds and exchange such surrendered bonds for the refunding part of the 1948 bonds; the city would, upon execution of the Ranson-Davidson commitment and pre-payment arrangements, have submitted to the Attorney General for approval the particular 1948 bonds earmarked for improvement and extension, and these bonds would have been approved pursuant to the Attorney General's earlier advices, registered with the State Comptroller under Article 710 of the Revised Civil Statutes and thereupon delivered to the Ranson-Davidson Company, Inc., in exchange for an equivalent amount of money paid to the city; all these latter events under the terms of the ordinance could and were evidently intended to have occurred prior to August 1, 1948, and the stipulated issue date to appear on the 1948 bonds was February 1, 1948; so prior to August 1, 1948, a large part of the 1948 issue would have become outstanding; as to the refunding part of the operation, the Ranson-Davidson Company, Inc., would pursuant to its firm commitment and arrangements with the bank of payment of the 1945 bonds, have caused payment thereof on and, as necessary, after their effective call date of August 1, 1948; beginning with that date, these 1945 bonds would presumably cease to accrue interest and would be surrendered and paid off; but presumably also these bonds would not all be surrendered on August 1, 1948, but, being held in many hands, would come in piecemeal for a considerable time thereafter and would, therefore, in a sense be still outstanding and not "finally paid" at a time well after the improvement and extension part of the 1948 bonds were delivered.

■ To the extent that the Attorney General's position would under all circumstances, and despite the firm banking arrangement for prepayment of the 1945 bonds, prevent issuance of any 1948 bonds, until every outstanding 1945 bond should be actually surrendered and discharged, we think it clearly erroneous. As stated in the brief of the City, the legislature cannot reasonably be said to have intended by Article 1113 to sub-

ject the legitimate financial needs of cities and towns to the whims of a few bondholders, who by failing to tender their bonds for retirement pursuant to the call, could indefinitely delay new issues. It is common knowledge that, where securities are outstanding in the public, holders often do for one reason or another fail to present them for redemption within a reasonable time after the redemption date. While the words "finally paid" in the statute are strong ones, they obviously must be subject to some interpretation in the light of different factual situations to which they may have to be applied, for example, the extreme case in which the amount due is tendered in cash to the bond holder direct on the call date and he arbitrarily refuses to accept it. In Edwards v. Morton, 92 Texas 152, 46 S. W. 792, a statute required the appellant from a Justice Court judgment to give bond "in double the amount of the judgment." Actually the appellant had recovered the judgment, but for an amount he considered too small. Despite the clear words of the statute, it was held that no appeal bond was required, since a contrary holding would have entailed the absurd result of making the appellant give security of his own judgment.

City of Houston v. Allred, 123 Texas 334, 71 S. W. (2d) 251, and City of Houston v. Mann, 139 Texas 640, 164 S. W. (2d) 548, are not contrary to the view here expressed. Those cases did not involve at all the question of whether an outstanding bond could be "finally paid" under Article 1113 only by its surrender against receipt of the amount due thereon. They simply held that when noncallable revenue bond were outstanding and evidently intended so to remain until maturity, the provision of Article 1109a, R. C. S., 1925 corresponding to and substantially the same as the above quoted portion of Article 1113 forbade a new issue payable from and secured by the annual net revenues of the waterworks system remaining after payment of the annual requirements of the outstanding issue. The emphasis placed in those cases on the words "finally paid" was not such a definition of the term as to require actual surrender of validly called bonds against payment. It was not a definition at all. The principal significance of the Allred case here lies in the court's final observation that: "The statute was evidently intended to prohibit the pyramiding of indebtedness secured by the income from water systems." Certainly no such purpose is involved when the outstanding bonds are validly called for a day certain and firm arrangements made with the bank of payment for their discharge. In Citrus Growers' Development Ass'n, Inc., et al v. Salt River Valley Water Users' Ass'n, et al, 34 Ariz. 105, 268 Pac. 773, the Supreme Court of Arizona followed what is evidently

a majority rule in holding that where a refunding plan provides for a cash sale of the refunding bonds, the cash to be used by the officials of the debtor corporation to retire the outstanding bonds at a slightly later date, the operation does not result in a double indebtedness of the corporation so as thereby to exceed the debt limit fixed in its charter, notwithstanding the interval of time between the sale of the new bonds and the expenditure of their process for retirement of the old. The reasoning is that, "while admitting a double indebtedness does actually exist, technically speaking, for a short time at least, * * * it is presumed that the officers of a corporation will do their duty and apply the proceeds of the second bond issue to the indebtedness to be refunded; * * * the contrary rule would in many cases make it impossible to refund the debts of a corporation." We think this authority is by analogy applicable to the present case. See also 38 Am. Jur., "Municipal Corporations," Par. 459, p. 141.

■ The foregoing applies primarily to the general proposition that actual surrender of all the outstanding bonds is not by virtue of Article 1113 necessarily a prerequisite for a new issue. Hower, we think it entails the further conclusion that, assuming, as in the present case, a valid call for redemption of the outstanding bonds at the next available call date, which is the next interest payment date, and assuming also the existence of firm, adequate banking arrangements for payment of the outstanding bonds, new bonds, such as the improvement and extension portion of the 1948 bonds here involved, may legally issue even in advance of the call date. The principal difference between the situation on or after the call date and the situation before the call date is that in the former the holder of the outstanding bonds have an immediate right to surrender them for payment, whereas in the latter they merely know that their bonds are to be redeemed on the call date and have no right to payment until the date arrives. The only other difference is that in a case like the present where the outstanding bonds are held by the public and will doubtless not all be surrendered until some time after the call date, a longer period may elapse between the date on which the new bonds are issued and the date on which the last outstanding bond is redeemed. In both situations, however, there will be some time interval during which part of both issues are, in a sense, outstanding and not "finally paid." In both instances, the same firm banking arrangements for payment of the old bonds will exist pending actual surrender of those bonds. Under the circumstances there is no more reason why the new bonds should not issue before the call date than on or after that date. As suggested in the Citrus Growers' Development Ass'n,

Inc., case, supra, the earlier date of issue may well be required by sound business practice. In matters of this sort, as was said in Dallas County v. Lockhart, 128 Texas 50, 96 S. W. (2d) 60, "The question must be viewed in its larger aspect, keeping in mind the ruling legislative purpose in the enactment of the various statutes." The purpose of Article 1113 was "to prohibit the pyramiding of indebtedness," not to restrict methods of municipal financing or refinancing to a degree out of harmony with modern business practice.

We do not consider the above views to conflict with Bexar County v. Sellers, 142 Texas 290, 176 S. W. (2d) 505, or Road District No. 1, Jefferson County, v. Sellers, 142 Texas 528, 180 S. W. (2d) 138, despite certain language in those cases which might seem to indicate the contrary when viewed apart from the real question at issue. Those cases did not concern the matter of whether a redemption call effective on the next interest payment date with respect to bonds admittedly callable as of that date was tantamount to "final payment" under Article 1113, when accompanied by firm arrangements for actual payment on that date. They simply held that certain county and road district bonds were not redeemable on the date as of which they were sought to be redeemed and that therefore proposed refunding bonds could not be approved for issue on that date. In the Bexar County case the bonds were sought to be retired in 1944 when in fact they were not legally callable until 1953, while in the Road District No. 1 case there was also a very substantial period of time between the claimed and the true redemption date. In neither case was redemption sought by the debtor municipality for a date as of which the bonds were in fact callable. The clear object of the municipality in both cited cases was to effect an immediate refunding, over the protest of outstanding bondholders, of bonds which were not subject to call for a long time in the future. It was not contemplated, as in the instant case, to issue the new improvement and extension bonds within a few weeks prior to the admittedly valid call date, upon the basis of a good faith call notice already given and firm arrangements already made for payment of the called bonds on that date.

We do not mean to hold that particular bonds allocated to refunding purposes may be registered with the Comptroller without contemporaneous surrender of the old bonds, as Articles 713-714, R. C. S., 1925 evidently require at least that a corresponding amount of the old bonds be surrendered before any refunding bonds may be registered.

■■ What we have said thus far refers only to the first four points of the Attorney General's brief. It does not dispose of the remaining points by which he asserts in substance that this action for mandamus is prematurely brought. With that assertion we must agree. It is one thing to say that a firm call and firm payment arrangements for the old bonds tantamount to "final payment" thereof under the statute and may accordingly be the basis for approval of new bonds even before the called redemption date arrives. It is another thing altogether to say that the Attorney General must now approve the new bonds in the absence of firm arrangements actually concluded, or to tell the Attorney General now that he must, on a forthcoming redemption date, approve new bonds, *if* the payment arrangements for the old bonds shall have been made. Articles 709-15, R. C. S., 1925, above referred to and Article 4398 are evidently the basis provisions for the Attorney General's duties in respect of bonds. None of these articles appears to contemplate advance or conditional approvals. These statutes do, on the other hand, imply substantial discretion on the Attorney General's part, as evidenced, for example, by the last sentence of Article 709 stating that: "Such county judge or mayor shall also furnish the Attorney General with any additional information he may require." Article 4398 requires the Attorney General to scrutinize "the facts" as well as the legal provisions appertaining to particular bond issues. The only statute we have been able to find that clearly contemplates advance or conditional approval is Sec. 8 of Article 1118n-4. (Acts 1947, 50th Leg., p. 1032, ch. 446), which apparently refers to bonds of cities of a different class than the City of McAllen and so has no application in the instant case. Whether or not the basic statutes mentioned should be taken to forbid the Attorney General to give advance or conditional approval of bonds, they evidently do not require him to do so. Our holding that a firm call notice and adequate banking arrangements may be the equivalent of final payment of outstanding bonds for the purposes of Article 1113 necessarily entails the further proposition that the factual and legal details incident to these contractual matters shall be carefully examined by the Attorney General prior to placing his certificate on the new bonds. Certainly we cannot say that, under the statutes governing his functions in a case like the present, he has any clear and unequivocal duty to approve the new issue, *subject* to adequate arrangements for payment of the old bonds. which have not been and conceivably might never be made. The rather specific provision regarding advance or conditional approvals in the above-mentioned 1947 act (Article 1118n-4), tends to confirm this view. The remedy of mandamus issues only where

the duty to be enforced is an unequivocal, unconditional present duty. City of Galveston v. Mann, 135 Texas 319, 143 S. W. (2d) 1028; Metropolitan Life Ins. Co., et al, v. Love, Insurance Comr., 101 Texas 444, 108 S. W. 821, 108 S. W. 1157.

The foregoing observations dispose of both the City's primary prayer that we compel approval of the 1948 bonds now and the alternative prayer that we now compel approval as of next August 1st. The absence of the actual banking arrangements for payment of the outstanding bonds is as important in the one instance as in the other. We cannot order the Attorney General under the facts of this case to assume that adequate arrangements will be made to his reasonable satisfaction by August 1, 1948. Neither can we assume that if such arrangements are made by that date, the Attorney General will, nevertheless, disapprove the bonds. Thomas B. Love v. D. W. Wilcox, 119 Texas 256, 28 S. W. (2d) 515, 525-6, 70 A. L. R. 1484.

The petition for mandamus is denied.

Opinion delivered May 12, 1948.

Rehearing overruled June 30, 1948.