**NORTHEAST TARRANT COUNTY WATER AUTHORITY (formerly Haltom City Water Authority), Appellant,**

v.

**BOARD OF WATER ENGINEERS et al., Appellees.**

**No. 10900.**

Court of Civil Appeals of Texas.

Austin.

April 24, 1963.

Rehearing Denied May 15, 1963.

Garrett & Garrett, Fort Worth, for appellant.

Will Wilson, Atty. Gen., Houghton Brownlee, Jr., Asst. Atty. Gen., Clark, Thomas, Harris, Denius & Winters, Mary Joe Carroll, Austin, for appellees.

ARCHER, Chief Justice.

In this suit appellant seeks to set aside the order of May 30, 1960, and to obtain a writ of mandamus requiring the Board of Water Engineers to permit appellant to enter into negotiations for storage space in the Grapevine Reservoir and to reinstate appellant's application on its docket and hold a hearing thereon.

Appellant, Northeast Tarrant County Water Authority (formerly Haltom City Water Authority) is a "governmental agency and a body politic and corporate" created by Article 8280–173, Vernon's Ann. Tex.St. The Board of Water Engineers is a public administrative agency, created by legislative action in 1913, for the purpose of conserving the public waters and promoting the most beneficial use thereof. The statutes pertaining to the powers and duties of the Board of Water Engineers are contained in Chapter 1, Title 128 of Revised Civil Statutes. For convenience appellee Board of Water Engineers is sometimes referred to herein as "Board."

Appellee Trinity River Authority of Texas, sometimes referred to in the record as "intervenor," is a "governmental agency of the State of Texas and a body politic and corporate", created by Article 8280–188, V.A.T.S. The territory of T.R.A. includes the territory of appellant. It is a primary purpose of this agency to promote the conservation and beneficial use of the public waters.

Grapevine Reservoir is located in the upper portion of the Trinity River Basin in Tarrant and Denton Counties, Texas. The River and Harbor Act approved March 2, 1945, 59 Stat. 10, provided-for this and other reservoirs as part of a comprehensive plan of improvements for navigation, flood control and allied purposes.

The Board filed a "Plea to the Jurisdiction and in Abatement" in answer to appellant's suit, and asserted that the action was, in fact, an appeal from the order of August 10, 1959, and not an appeal from the order of May 30, 1960, so that the action had not been filed within the 120 day period provided by Section (12) of Article 7477.

Trinity River Authority intervened over the objection of appellant.

The Trial Court carried the pleas to the jurisdiction and in abatement along with the case, and heard evidence. It entered a "take nothing judgment" denying appellant all relief requested. In its findings of fact and conclusions of law, the Trial Court found certain facts, most of which are not in dispute. The disputed findings are specifically referred to in appellant's points which follow.

In its Conclusions of Law, the Trial Court found that the case was an appeal from the Order of August 10, 1959, not timely filed, and, in effect, sustained appellee's Plea to the Jurisdiction.

The Court further found that mandamus did not lie and that all actions of both appellees were supported by substantial evidence.

The appeal is predicated on ten points and are to the effect that the Trial Court erred in finding that there is an active project of the U. S. Army Corps of Engineers which will utilize all of the navigation storage space in Grapevine Reservoir is contrary to the evidence and the existing state and federal laws concerning priority in appropriation of waters, and in finding that the intervenor did conduct certain negotiations with the U. S. Army Corps of Engi-

neers into the acquisition by plaintiff of the navigation and sedimentation storage in Grapevine Reservoir * * * is contrary to the undisputed evidence, and that the Court lacked jurisdiction to apply the Substantial Evidence Rule to a matter within the primary jurisdiction of the Board of Water Engineers and upon which the administrative agency has heard no evidence and made no determination on the merits; in holding that the orders of the Board were based upon substantial evidence.

In holding that the Board had authority to reject an application because of the applicant's failure to have a contract for storage (extant) space in the reservoir of another, in holding that the action filed by appellant was an appeal from the Board's orders of August 10, 1959, rather than from the order of May 30, 1960, in holding that mandamus did not lie to compel the action of the Board sought by appellant, because appellant was entitled to affirmative action designating appellant as an agency to negotiate for storage, and because the Board's order of August 10, 1959 delegating some of its duties to T.R.A. was void.

We believe that the judgment of the Trial Court was correct.

 The Court found that there is, and at all times material to this suit, there was, an existing active project of the U. S. Army Corps of Engineers which will utilize all of the navigation storage space in the Grapevine Reservoir, and we believe that such finding is not contrary to the evidence, or the laws concerning priority in appropriation of waters.

 Then too, appellant had been designated by the Legislature as an agency authorized to negotiate with Federal authorities for storage space in reservoirs, and there was no need for the Board to confer any further authority.

 There can be no question but that the appeal is from the order of the Board of Water Engineers dated August 10th,

1959, and that the appeal was not prosecuted within the time fixed in Article 7477, V.A.C.S., Sec. (12) which provides, in part:

"Any person affected by any ruling, order, decision, or other act of the Board, may, within one hundred and twenty (120) days after the date on which such act is performed, or, in case of a ruling, order, or decision, within one hundred and twenty (120) days after the effective date thereof, file a petition in an action to review, set aside, modify, or suspend such ruling, order, decision, or other act. * * *"

There is no dispute as to the facts in this case concerning relevant dates, and the filing by appellant of its application to the Board for a permit to appropriate 48,000 acre feet of water per annum with necessary storage space to be acquired in Grapevine Reservoir. This application was rejected. At the time of such rejection there was pending before the Board the application of the City of Grapevine and the application of Tarrant County Water Control and Improvement District No. 1, and both of these applications were rejected.

Appellant, on March 8, 1960, wrote a letter to the Board making two requests, (1) that the rejected application for a permit be reinstated, and (2) that Trinity River Authority's authority as the Board's agent be revoked and that appellant be authorized to conduct the negotiations with the Federal authorities. These requests were denied on May 30, 1960. This suit was filed on July 1, 1960 as a purported appeal from the order of May 30, 1960.

It was too late to raise the matters involved in the order of August 10, 1959, because of the time limitation in Article 7477.

The Board does not contend that its plea to jurisdiction extends to and is good as the allegations in appellant's action for mandamus against it to require it to set aside its previous order designating the Trinity River Authority as the agent to deal with the Federal authority, and to require the Board to designate appellant as the proper agent, but does contend that the limitation period in Article 7477 is jurisdictional.

■ The Board Rule 205.4 is valid and reasonable. The Board is given rule-making power by Article 7531, which provides that the Board shall adopt rules and regulations, etc.

Rule 205.4 reads:

"205.4 STORAGE IN ANOTHER'S RESERVOIR: A permit is required to appropriate State waters for storage in the reservoir of another person. Permission of the reservoir owner must be obtained, as well as a permit to divert and use the water from such reservoir."

It is reasonable for the Board to require any applicant who wishes to use another's reservoir to show that he has consent to use such.

■ Valid rules and regulations passed and promulgated pursuant to statute have the force and effect of legislation, Texarkana & F. S. R. Co. v. Houston Gas & Fuel Co., 121 Tex. 594, 51 S.W.2d 284 (1932), and Article 7531, V.C.S. specifically provides that such rules shall "be binding upon all persons affected by such provisions."

The Trial Court properly refused to order by writ of mandamus that the Board revoke its prior order designating the Trinity River Authority as the agency to deal with Federal authorities for the acquisition of storage space in Grapevine Reservoir.

We believe that the actions of the Board and that of the intervenor were reasonably supported by substantial evidence.

The evidence reasonably supports the Trial Court's finding that there was and is an existing active project of the U. S. Army Corps of Engineers which will utilize all of the navigation storage space in Grapevine Reservoir.

James A. Cotton, a consulting Engineer for Trinity River Authority of Texas, testified in part:

"Q Did you ever discuss this matter with any official of the Corps of Engineers?

"A Yes, about September, I believe, in 1959, I discussed the matter with Colonel Walter Wells, at that time the District Engineer of the Fort Worth District, who had jurisdiction over the Grapevine project.

"Q That was in September of 1959?

"A To the best of my recollection, yes, sir. It was after the Authority had been designated by the Board of Water Engineers to negotiate with the Corps.

"Q What did Col. Wells tell you?

"A Well, the important things that he told me was, first of all, that the Corps would not under any circumstances consider a contract on the siltation or sedimentation storage. That they would not enter into a contract for that space. I asked him about the navigation storage, and he advised that they would enter into negotiations for that space as a result of the 1958 Act, I believe, which authorized him to do so.

He said that in the past they had not been willing to consider a contract on the navigation storage; that they had been requested many times in the past, and always refused, but in view of the 1958 Act, he felt like they would be required to negotiate for the conservation storage. He advised me that any contract that was entered into with the Trinity River Authority, or any one else, on the navigation storage would clearly specify that the use was

temporary and at such time as it was determined it was needed for navigation, that the Government would reclaim the storage and use it for navigation purposes.

"Q Now, you are familiar with the Grapevine project, are you not?

"A Yes, I am.

"Q Will you please state the basis of your familiarity with that project?

"A Well, it has got a rather long history. I was employed by the Corps of Engineers at the time the Grapevine project was planned and built. Since 1949 I have been in private practice, and I have made exhaustive studies of that for the Trinity River Authority and for the City of Dallas.

"Q Would you please state for the record the quantities of water and the allocation thereof that are presently in Grapevine Reservoir?

"A At the present time, the allocations, as testified here yesterday, I believe, by Mr. Rady, the City of Dallas owns 85,000 acre feet of the conservation storage. Park Cities have the right to use 50,000 acre feet of the conservation storage, and the City of Grapevine 1,250 acre feet, and there is retained by the Federal Government 25,000 acre feet of the conservation storage for navigation purposes. In addition to this storage, there is a substantial amount of flood control storage—as I recall, some 230,000 acre feet. I think the figure has already been entered into the testimony.

"Q Based upon what Col. Wells told you and your knowledge of the Grapevine Reservoir, will you please state what you reported to Mr. Carpenter as a result of these investigations?

"A Well, I was forced to advise Mr. Carpenter that I did not consider the Grapevine Reservoir a suitable —or the navigation storage in Grapevine Reservoir under those conditions, a suitable water supply for Haltom City.

\* \* \* \* \* \*

"Q Will you explain a little bit more in detail as to why you considered the supply to be not feasible because of the navigation storage?

"A Well, I believe that Col. Wells correctly advised me when he stated that any contract executed with the Authority or anyone else would have the provision in it that upon a determination by the Corps that the water was needed for navigation purposes, the Government would take the storage back and use it for navigation purposes.

"Q And that constituted an interruptible supply, did it not?

"A Yes.

"Q Is that suitable for municipal and domestic purposes?

"A In my judgment, I do not think it is, and that is what I advised Mr. Carpenter, that it was not. Now, you have to realize that there is a navigation project on the Trinity River at this time.

"Q Is that an existing project?

"A It is an existing project.

"Q That is authorized by Congress?

"A It is authorized by Congress and partly constructed.

"Q What portions of it are constructed?

"A That portion from the Houston Ship Channel and Galveston Bay to the City of Anahuac. Now, at that time when that part was constructed, about two years ago when that part was constructed— Well, longer than that, maybe three years ago, construction was suspended due to the existence of a salt water problem. The navigation channel had increased the salt content in the Lower Trinity River, which is extensively used for rice irrigation and some industrial use.

"The Corps of Engineers has completed a study, and are recommending to the Congress the authorization and construction of what is called the Wallaceville Project or Salt Water Barrier Project, which would be a low dam near the mouth of the Trinity River, containing locks, and this project was determined to be necessary to eliminate this salt water intrusion problem.

"There is every reason to believe that that project will be constructed in the next few years, but with respect to the use for municipal use of this navigation storage, under a contract where it can be reclaimed for navigation, the problem could be even more serious. At any time we have a period of prolonged low flow in the Trinity River, even under present conditions, there is a salt water intrusion problem which is recognized to be caused certainly to some extent by the navigation project.

"That problem could be lessened or mitigated by the release of water from an upstream reservoir to increase the flow during such periods of time, so in my judgment it would be possible at any time that we have prolonged drouth and extended period of low flow, that this water in Grapevine Reservoir and also that in the

Benbrook Reservoir could be called upon for navigation purposes to mitigate the salt water problem in the Lower Trinity River in connection with the navigation project, and certainly it will be called upon as soon as this salt water barrier project is completed.

"Q All right, then, sir, by way of summary, there is an existing navigation project on the Trinity River at the present time, isn't there?

"A Yes, sir.

"Q And under present day conditions, it is entirely possible that navigation water would have to be used in connection with that navigation project? ·

"A Yes."

Mr. Cotton's testimony in this respect was not disputed.

There can be no question but that intervenor did conduct certain negotiations with the U. S. Army Corps of Engineers for the purpose of securing for plaintiff navigation and sedimentation storage, and the court's finding to this effect is supported by the record, in the evidence of Mr. Cotton.

■ We believe that the Trial Court was correct in holding that mandamus did not lie to compel the Board to appoint appellant as its agent to deal with the Federal authorities in negotiating for storage in Grapevine Reservoir.

The selection by the Board of one agency to deal with Federal authorities in federal reservoirs is a discretionary matter which may not be compelled by mandamus.

In Lacy v. State Banking Board, 118 Tex. 91, 11 S.W.2d 496 (Tex.Comm.App., 1928) one statement of the rule is as follows:

"The writ of mandamus is a legal writ applicable alike in legal or equitable proceedings. But ·its issuance is most frequently determined upon equitable principles. (Omitting citations) But whatever the technical nature of the writ, under all the authorities such extraordinary writ will not issue to compel a public officer to perform an act, unless a clear right to such performance in favor of the relator is shown and likewise a correspondingly clear legal duty of such officer to perform is shown. In other words, mandamus to compel the performance of an official act will not issue where the act sought to be commanded involves an official discretion, but only where such act is ministerial in its nature."

■ The Board of Water Engineers is not required to make findings of fact in orders rejecting an application to appropriate water.

Article 7503, V.A.C.S., authorizes the Board to reject applications if it finds any one or more of certain conditions to exist.

(1) That there is no unappropriated water in the source of supply;

(2) That existing water rights or vested riparian rights would be impaired; or

(3) That the proposed use would be detrimental to the public welfare.

■ Courts will presume all controverted fact issues as found in favor of the order entered, and the Board has not violated any unequivocal, unconditional present duty to appellant. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Southwestern Greyhound Lines, Inc. v. Railroad Commission, 208 S.W.2d 593 (Tex.Civ.App.) er. ref. N.R.E.

In City of McAllen v. Daniel, 147 Tex. 62, 211 S.W.2d 944, in which the Court held:

"The remedy of mandamus issues only where the duty to be enforced is an unequivocal, unconditional present duty."

The selection by the Board of intervenor as an agent to negotiate with Federal authorities for the acquisition of storage space was discretionary in nature.

The Trial Court found in findings of fact Nos. 15 and 16, that intervenor was created for the purpose of conservation and beneficial utilization of the storm, flood and unappropriated flow waters of the Trinity River watershed and comprises all of the territory contained within the counties of Dallas, Tarrant, Ellis, Navarro, and Chambers, and portions of the counties of Anderson, Freestone, Henderson, Houston, Kaufman, Leon, Madison, Polk, San Jacinto, Trinity, Walker and Liberty.

"16. The plaintiff's territorial jurisdiction is limited to the city of Haltom City, Tarrant County, Texas, and annexed territory, if any, within Tarrant County, Texas."

It has been the policy of the Corps of Engineers of the U. S. Army to call upon the State Board of Water Engineers to designate some single agency with which the Corps shall deal in negotiations concerning storage space in Federal reservoirs. Mr. Cotton, who has had a great deal of experience with the Corps of Engineers, testified as follows:

"Q. Will you state whether or not it is the policy of the Corps of Engineers, if you know, that it will not deal with more than one agency at a time?

"A. That is certainly their preference. They always request if it is at all possible that they be permitted to deal with just one agency. Now, in this particular case, the Corps had been in the past contacted about this navigation storage by the City of Dallas, Irving, Grand Prairie, Arlington, Haltom City, the Tarrant County Water District, and perhaps others, and under circumstances of that kind the Corps always asks the Board of Water Engineers to designate an agency with whom it shall deal, and otherwise they feel it would be a presumption on their part that they could be criticized for trying to appropriate water in effect by selecting one agency."

The judgment of the Trial Court is affirmed.

Affirmed.