

# The Attorney General of Texas

March 28, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

01 Texas, Suite 700
Juston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. William N. Kirby
Commissioner of Education
Texas Education Agency
1701 N. Congress Avenue
Austin, Texas    78701

Opinion No. JM–460

Re: Effect of refunding those bonds originally guaranteed under the Texas Bond Guarantee Program

Dear Mr. Kirby:

Your letter requesting an opinion of this office reads in part:

> The Texas bond guarantee program was established in 1983 pursuant to the provisions of the Constitution of Texas, article VII, section 5, and the enabling statute, Texas Education Code, section 20.901 et seq. Through this program the bond issues of local school districts are secured by the corpus and income of the Permanent School Fund. This guarantee results in better bond ratings and lower interest rates for Texas school districts. Since its inception, 218 bond issues worth $1,250,505,000 have been guaranteed. We estimate that the guarantee program already has saved Texas school districts and their taxpayers millions of dollars. At present, 25 districts have pending applications for the guarantee of bonds worth $122,480,000.

> . . . .

> In the past year, 33 bond issues guaranteed by the Permanent School Fund have been defeased and refunded pursuant to Texas Revised Civil Statutes Annotated, article 717k, or Texas Education Code, section 20.05. These refunded bonds are in the principal amount of about $336,010,000.

> The question has arisen whether such bonds that have been fully defeased and refunded are still guaranteed by the Permanent School Fund. If full provision has been made for the payment of the bonds so that they are no longer considered outstanding for purposes of the guarantee, then the securities currently pledged to their payment

pursuant to the guarantee could be reallocated to guarantee pending applications from other districts. This result would allow us to reinstitute the guarantee program on a limited basis, thus producing additional savings for Texas school districts and taxpayers.

A "bond" is a contract whereby one binds himself to another to pay a sum of money or do some other act. See 10 Tex. Jur. 3d, Bonds and Undertakings §1, at 4. Public bonds issued by states and their political subdivisions constitute contracts within constitutional provisions prohibiting laws impairing the obligation of contract. U.S. Const. art. I, §10; Tex. Const. art. I, §16; Determan v. City of Irving, 609 S.W.2d 565, 569 (Tex. Civ. App. - Dallas 1980, no writ). A "defeased" bond is one that has been defeated, i.e., rendered void and of no effect by another instrument. See Black's Law Dictionary, 376 (5th ed. 1979). Cf. City of McAllen v. Daniel, 211 S.W.2d 944, 947-48 (Tex. 1948).

"Refunding" has been defined as a replacement of one obligation with another, including the selling of new securities for the purpose of redeeming those outstanding. See 64 Am. Jur. 2d Public Securities and Obligations §261, at 295. The cited authority also asserts that refunding bonds are not only obligations in themselves for what they purport to be on their face and under the statutes pursuant to which they are issued, but are authorized extensions and continuations of the obligations represented by the bonds refunded; that refunding bonds do not create new debt but merely continue an existing debt. Id. §267, at 301.

As you note, article VII, section 5 of the Texas Constitution was amended in 1983 to provide:

> (b) The legislature by law may provide for using the permanent school fund and the income from the permanent school fund to guarantee bonds issued by school districts.[1]

Anticipating adoption of the constitutional amendment, the legislature in 1983 enacted statutory provisions to implement the new authority - statutes which are now codified as subchapter E of the

---

1. Subsection (a) of that constitutional provision establishes as the permanent school fund "[t]he principal of all bonds and other funds, and the principal arising from the sale of lands hereinbefore set apart to said school fund," and establishes as the available school fund (to be applied annually to the support of the public free schools) "all the interest derivable therefrom and the taxes herein authorized and levied."

Texas Education Code. See Acts 1983, 68th Leg., ch. 154, at 671. Section 20.902 of the Education Code provides that upon approval by the commissioner of education, "bonds issued under Subchapter A of this chapter [chapter 20],[2] including refunding bonds" are guaranteed by the Permanent School Fund. Section 20.903(a) states that

> [t]he commissioner may not approve bonds for guarantee if the approval would result in the total amount of outstanding guaranteed bonds exceeding an amount equal to two times the cost value or market value, whichever is less, of the permanent school fund, exclusive of real estate. . . . (Emphasis added).

That limitation has prompted your question.

You accompanied your request for an opinion with information pertaining to a particular method of "refunding" which, we understand, is the focus of your concern, and we will limit our discussion accordingly. In that connection, you advise:

> At the time the original bonds of the district were issued, the governing body of the school district made provision for the payment of the bonds by the levy of an ad valorem tax which was pledged to the payment of the principal of and interest on the bonds. Section 20.01 of the Texas Education Code.

> By reason of the refunding, the original bonds are no longer payable from ad valorem taxation, but are payable from the principal of and interest on the direct obligations of the United States government purchased with the proceeds of the refunding bonds and other moneys belonging to the school districts (which have been deposited under the escrow agreement to which reference is made in the statute).

---

2.    Subchapter A of chapter 20 of the Education Code, consisting of sections 20.01 through 20.06, concerns school district tax bonds and maintenance taxes. Section 20.01 authorizes school districts to issue negotiable coupon bonds to acquire sites for, construct, and equip school buildings, and to levy ad valorem taxes for their payment. Section 20.05(b) provides for the issuance of refunding bonds payable from ad valorem taxes "to refund or refinance all or any part of any district's outstanding bonds" without an election unless the Texas Constitution requires one.

Section 20.05 of the Education Code is part of subchapter A, the subchapter which concerns the tax bonds that may be guaranteed according to subchapter E. Under it, refunding bonds may be delivered to the present bondholders in exchange for the old bonds to be refunded, or they may be sold for cash with which to pay off the old bonds in full (principal and interest to maturity) or to redeem the old bonds before maturity (principal and interest to the redemption date, plus any redemption premium). Or if money is available therefor from other sources, outstanding bonds may be paid off or redeemed without issuing refunding bonds.

Subsections (g) and (h) of section 20.05, Subchapter A, provide a method for paying off or redeeming bonds:

(g) To refund bonds or to pay or redeem bonds in whole or in part without issuing refunding bonds, the governing board or commissioners court may deposit directly with the paying agent the proceeds from the sale of refunding bonds or any other available funds or resources. The deposit must be in an amount sufficient, after taking into account both the principal and interest to accrue on the assets of any escrow account created under Subsection (h) of this section, to provide for the payment or redemption of the bonds and assumed obligations that are to be refunded or to be paid or redeemed. The deposit constitutes the making of firm banking and financial arrangements for the discharge and final payment or redemption of the bonds being refunded. (Emphasis added.)

(h) The governing board or commissioners court may enter into an escrow or a similar agreement with the paying agent with respect to the safe-keeping, investment, reinvestment, administration, or disposition of the deposits, but the deposits may be invested and reinvested only in direct obligations of the United States, including obligations the principal of and interest on which are unconditionally guaranteed by the United States and that mature or bear interest payable at times and in amounts sufficient to provide for the scheduled payment or redemption of the bonds. The governing board or commissioners court shall enter into an appropriate escrow or a similar agreement if any of the bonds are scheduled to be paid or redeemed on a date later than the next succeeding scheduled interest payment date.

Subsection (i), expressly states:

> (1) If the governing body or commissioners court has entered into an escrow or a similar agreement under Subsection (h) of this section, <u>the refunded bonds are considered to be defeased and may not be included in or considered to be an indebtedness of the district for the purpose of a limitation on outstanding indebtedness or taxation for any other purpose.</u> (Emphasis added).

The foregoing provisions, all found in subchapter A, were added by Acts 1983, Sixty-eighth Legislature, chapter 256, page 1142, effective May 27, 1983. Subchapter E, which concerns the constitutionally authorized guarantee, does not contain similar language. Subchapter E became law November 8, 1983, upon adoption of the constitutional amendment. Acts 1983, 68th Leg., ch. 154, at 671.

You wish to know whether the making of such subsection A "deposits" for payment will deprive the underlying bonds (the bonds to be refunded) of any subsection E guarantee that might have originally protected them, even though the underlying bonds have not been actually surrendered by the holders thereof and cancelled. In other words, would the underlying "refunded" bonds continue to constitute "outstanding guaranteed bonds" for purposes of the section 20.903(a) limitation?

Section 20.902 of subchapter E provides that upon approval by the commissioner, "bonds issued under Subchapter A of this chapter, <u>including refunding bonds,</u> are guaranteed by the corpus and income of the permanent school fund." (Emphasis added). The provision is ambiguous because the emphasized words could have either of two meanings. "Bonds issued," <u>including refunding bonds,</u> could mean that the holders of new bonds issued to refund current bonds could themselves be the beneficiaries of the constitutionally-permitted guarantee if the commissioner approved. Or, those words could mean that the holders of original bonds so guaranteed are to be protected by the guarantee so long as the school district remains obligated to them, even if the original bonds are "refunded," <u>i.e.,</u> even though the original obligations are extended and continued by the "refunding" device.

An uncodified portion of the act adding subchapter E to chapter 20 of the Education Code helps resolve the ambiguity. Section 2 of Acts 1983, Sixty-eighth Legislature, chapter 154, page 675, states:

> In accordance with the provisions of this Act, the commissioner of education may approve for guarantee any eligible bonds issued after the effective date of this Act, including refunding bonds <u>for bonds issued or sold before the effective date of this Act.</u> (Emphasis added).

In our opinion, this passage demonstrates a legislative understanding that the commissioner will separately approve original and refunding bonds for participation in the guarantee program.  Such an intent, while not necessarily inconsistent with the idea that the guarantee survives the "refunding" of guaranteed bonds, does denigrate the argument that by using the words, "including refunding bonds", in section 20.902, the legislature expressly so provided.

The "refunding" scheme of subsections (g) and (h) of section 20.05, when coupled with the subsection (i) provision, allows the complete substitution of the security originally bargained for.  As you have noted, by reason of such refunding, the original bonds are no longer payable from ad valorem taxation, but are payable from the principal and interest on the direct obligations of the United States purchased with moneys deposited in escrow for that purpose.  Generally, where the resource for the payment of bonds is the taxing power of a political subdivision as it existed when the bonds were issued, any law which withdraws or limits such power and leaves no adequate means for payment of the bonds is forbidden by constitutional provisions protecting the obligation of contract.  Mobile v. Watson, 116 U.S. 289, 305 (1886).  Whether a substituted means of payment is "adequate" is another question, see Shapleigh v. City of San Angelo, 167 U.S. 646, 657 (1897), but we need not address it here.

The question of "adequacy" is not controlling here because the substitution of security, whatever its "adequacy," cannot constitute an impairment of the obligation of contract if the right to make such substitution was a part of the original contract between the school district and the bondholders.[3]  The holders of the bonds took them with the rights guaranteed and defined by the statutes in effect at the time of their issuance, and those statutes became a part of, and govern, the contracts.  Bankers Life Co. v. Breckenridge Independent School District, 97 S.W.2d 933, 937 (Tex. 1936).  See Empire Gas & Fuel Co. v. State, 47 S.W.2d 265, 266 (Tex. 1932).  Cf. Norton v. Kleberg County, 231 S.W.2d 716, 718 (Tex. 1950).

The provisions of subsections (g), (h), and (i) of subchapter A and those of subchapter E were enacted during the same session of the legislature.  They are in pari materia and are to be read together, one with reference to the other, as though embodied in a single act.  See 53 Tex. Jur. 2d Statutes §§186, 188, at 280, 286.  In that light, the "guarantee" provisions of subchapter E were enacted in contemplation of the "refunding" provisions of subchapter A; and the requirement of section 20.903 that the total amount of outstanding guaranteed bonds shall not exceed two times the cost value or market value of the permanent school fund (whichever is less), must be read with the language of section 20.05, subsection (i), stating that if a

---

3.  We understand that all the bonds to be "refunded" here were issued after the effective dates of the constitutional amendment and the 1983 legislation.  This opinion is limited to those circumstances.

"refunding" escrow agreement as described has been entered into, the refunded bonds are to be considered to be defeased and may not be included in or considered to be an indebtedness of the district "for the purpose of a limitation on outstanding indebtedness or taxation or for any other purpose." (Emphasis added).

The language of the other statute authorizing a similar "refunding" mechanism, article 717k, V.T.C.S., is not so strong, but when its provisions are analysed, the effect is the same. Section 7 of article 717k provides that when a deposit of funds in sufficient amount has been deposited with the state treasurer in accordance with the statute, the deposit

> shall constitute the making of firm banking and financial arrangements for the discharge and final payment or redemption of the obligations being refunded.

This language was added to the statute in 1969, effective June 14, 1969. See Acts 1969, 61st Leg., ch. 783, at 2316. Section 7A of article 717k, which provides for an escrow arrangement similar to that described in subsection (b) of section 20.05 of the Education Code, was added in 1979, but at that time it applied only to the refunding of "revenue" bonds. See Acts 1979, 66th Leg., ch. 832, at 2182. In 1985, however, it was amended, effective June 8, 1985, to apply to bonds payable from ad valorem taxes as well. See Acts 1985, 69th Leg., ch. 318, at 2513.

The phrase, "firm banking arrangements," has acquired a "final payment" judicial gloss with respect to refunding bonds. See City of McAllen v. Daniel, 211 S.W.2d 944, 947 (Tex. 1948). Absent misrepresentation or unconscionable behavior on the part of government, so long as the bonds to be refunded pursuant to the mechanism of a particular provision were issued subsequent to the date the provision became applicable to such bonds, the mechanism may be utilized without impairing the obligation of the bonds because the statutory provision became a part of the contract when the bonds were issued.

We have not been furnished the agreements involved, but no suggestion has been made that the terms of the statutes or the bonds are materially misleading to the investing public. Cf. United States v. Sioux Nation of Indians, 448 U.S. 371 (1980); United States Trust Company of New York v. New Jersey, 431 U.S. 1 (1977); Continental Illinois National Bank and Trust Company of Chicago v. State of Washington, 696 F.2d 692 (9th Cir. 1983), cert. denied, 460 U.S. 1077 (1983). Under such circumstances, we are of the opinion that school district ad valorem bonds which incorporated the provisions of section 20.05 of the Education Code as amended in 1983, or the provisions of article 717k, V.T.C.S., section 7A, as amended in 1985,[4] at the time

---

4. As amended in 1969, for refunding accomplished pursuant to section 7 of article 717k.

they were issued, may be refunded pursuant to those provisions without impairing the obligation of the bonds, and when such refunding has been accomplished pursuant to the statutory mechanism, the refunded bonds no longer constitute "outstanding guaranteed bonds" within the meaning of section 20.903 of the Education Code limiting the amount of bonds which may be guaranteed by the permanent school fund.

## S U M M A R Y

School district ad valorem bonds incorporating the provisions of statutes respecting refunding of the bonds may be refunded pursuant thereto without impairing the obligation of the bonds, assuming the investing public has not been misled. When such refunding has been accomplished, the refunded bonds no longer constitute "outstanding guaranteed bonds" within the meaning of the statute limiting the amount of bonds which may be guaranteed by the permanent school fund.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General